LABORDE, Judge.
Plaintiff, Oran Montgomery, sued his employer, Port City Construction Company, Inc., and its compensation carrier, Commercial Union Assurance Company, to recover workmen’s compensation benefits and penalties and attorney’s fees. The trial court, finding plaintiff to be totally and permanently disabled, granted him benefits. His claim for penalties and attorney’s fees was denied. Plaintiff appeals that portion of the judgment denying him penalties and attorney’s fees.
The sole issue on appeal is: Whether Commercial Union acted arbitrarily, capriciously or without probable cause in failing to pay plaintiff’s workmen’s compensation benefits so as to be subject to penalties and attorney’s fees under LSA-R.S. 22:658.[1] We hold that it did.
*970 Plaintiff, who was working as a construction laborer for Port City Construction Company, was injured on March 23, 1977, when a large board fell 30 to 40 feet and struck him on the head. His employer and its insurer, Commercial Union, never questioned that plaintiff suffered an employment related injury and that whatever disability he suffered was compensable at the rate of $95 per week. Compensation was paid at that rate from the date of the accident until September 21, 1977, for a total of $2,375. Defendants also paid most of the medical expenses for that period of time and some medical expenses incurred thereafter. The present suit was filed November 2, 1977. Trial was held on April 2, 1981.
Commercial Union stopped paying compensation in September of 1977 because it believed that plaintiff had completely recovered from whatever physical injury he had suffered from the accident. From September of 1977 through the date of trial on April 2, 1981, Commercial Union, for the same reason, refused to reinstate compensation benefits and also refused to pay the bulk of medical expenses incurred for almost four years.
Plaintiff contends that he never recovered from the accident and that defendants’ termination of benefits and its refusal to reinstate them during this interval prior to trial was unreasonable and entitles him to penalties and attorney’s fees.
From the date of the accident until September, 1977, plaintiff was treated by at least twenty doctors in Lake Charles, Houston or Lafayette. In terminating benefits as of September 21, 1977, Commercial Union relied upon the examinations conducted by two of these doctors, .Dr. Daniel C. Dunlap, a neurologist of Lafayette and Dr. Fred C. Weber, an orthopedist of Lafayette. Both doctors, with a few qualifications, found nothing wrong with plaintiff and felt he could return to work.
The record shows that subsequent to these findings, Commercial Union received medical reports from doctors, each well-respected in his field, who had examined and treated plaintiff. The great preponderance of these subsequent medical reports indicated that plaintiff had not sufficiently recovered from the accident such that he could return to work. Several doctors even went so far as to express doubt as to whether plaintiff would ever be able to return to work. Examples of only a few of the subsequent medical opinions which conflicted with the medical opinions of Drs. Weber and Dunlap follow. Plaintiff, complaining of severe pain, saw Dr. Charles Neblett, a neurosurgeon in Houston, on June 29, 1977. Dr. Neblett, after examining plaintiff, found a neurological basis for plaintiff’s complaints of headaches and neck pain. Plaintiff was hospitalized for additional tests in Methodist Hospital in Houston. X-rays confirmed a fracture of the mandible which required treatment. This injury had been completely over-looked by the prior treating physicians. Dr. Neblett testified he also found limitation of motion in movement of plaintiff’s head with spasms in the neck area and tenderness radiating into the right shoulder. He also stated plaintiff suffered a hearing loss and that there was a significant degree of cervical spondylosis— all findings, he felt, which were consistent with a blow on the head. Dr. Neblett’s deposition was taken November 6, 1979.
Plaintiff continued to suffer and was referred to Dr. Joseph Epps, Jr., a neurosurgeon in New Orleans. Dr. Epps examined plaintiff on May 11, 1978, and due to his findings he had a myelogram and an EMG run at Baptist Hospital in New Orleans. The tests showed nerve root involvements at L4-5 and SI. He recommended surgery and performed a laminectomy at L4 — 5 and L5/S1 and a diskectomy on the right side. *971 Plaintiff continued to suffer with neck pain and when discharged from the hospital, Dr. Epps prescribed that he wear a transcuta-neous nerve stimulator. Plaintiff continued to experience signs and symptoms associated with nerve root irritation in spite of the surgery. It was Dr. Epps’ opinion that plaintiff was disabled from engaging in any gainful employment due to his injury resulting from the accident and that his chances for returning to employment requiring manual labor were poor as were his chances for improvements in his medical condition. Dr. Epps was deposed on August 21, 1979, and as early as June 6, 1978, Commercial Union was in receipt of copies of the operation report and discharge summary.
Plaintiff was also seen by Dr. Jerome W. Ambrister, an orthopedic surgeon in Lake Charles, on October 2,1978, and January 26, 1979. Dr. Ambrister submitted a report on May 19, 1979, and testified in court that plaintiff was disabled from returning to any type of arduous work and that his prognosis of ever returning to work at any job was poor.
Plaintiff was next seen by Dr. Ernest Kinchen, a general surgeon in Lafayette, on September 18, 1979. Plaintiff was hospitalized after an EMG indicated either probable L5-S1 denervation or probable nerve root lesion. Dr. Kinchen indicated that plaintiff could not return to work and that although he was developing psychological problems, he also had real findings from an objective medical standpoint relative to the back and neck area. Dr. Kinchen felt plaintiff could not return to any type of strenuous work because of the persisting problems. Dr. Kinchen was deposed on November 5, 1979.
On September 20, 1979, at Dr. Kinchen’s request, plaintiff was examined by Dr. William Cloyd, a psychiatrist in Lafayette. Dr. Cloyd found a severe traumatic neurosis with deterioration of personality function with severe symptoms which were neurotic almost to the psychotic level. He found both physical and emotional problems all of which were very real and disabling to plaintiff. On the date Dr. Cloyd’s deposition was taken, November 5, 1979, he felt plaintiffs condition was deteriorating instead of improving. It was his opinion that more probably than not, plaintiff would never be able to return to any type of employment.
Almost all of the doctors who examined plaintiff agreed that he was not a malingerer, nor was he preoccupied with compensation.
Assuming that Commercial Union relied on the earlier reports of Drs. Weber and Dunlap to justify its termination of compensation benefits in September of 1977, defendant was placed on notice shortly and then continually thereafter of conflicting medical reports. Upon receipt of medical reports showing that plaintiff was still injured and could not return to work, it was incumbent upon defendants to make a reasonable effort to ascertain plaintiff’s exact condition. The record contains no evidence as to such an inquiry. We hold defendant, Commercial Union, was arbitrary and capricious in failing to make such an inquiry, choosing instead to rely on the earlier dated medical reports of two doctors. Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976).
The trial court, in denying plaintiff penalties and attorney’s fees, stated:
“. . . viewed in retrospect and as a whole, plaintiff’s entitlement to compensation is clear, but it would be hard to say at what point in the development of the medical case that became clear, and I do not think that this is a case where penalties and attorney’s fees ought to be imposed . . . . ”
We disagree. Commercial Union terminated compensation benefits on September 21, 1977, and refused to reinstate same up until the time of trial on April 2, 1981. In the meantime, it received report after report indicating that plaintiff had not fully recovered and still could not return to work. While it may be hard to pick a precise date, it is clear that at some time prior to trial Commercial Union acted arbitrarily and capriciously in not resuming and bringing up to date payment of weekly benefits to plaintiff. We hold that it is liable for pen *972 alties in accord with LSA-R.S. 22:658 and we place the date at August 21, 1979, the date Dr. Epps was deposed.
Commercial Union’s action also subjects it to attorney’s fees. In determining the amount to be awarded, the relevant factors include the degree of skill of the attorney and the volume of work performed by him in prosecution of the claim. Considering these factors we award attorney’s fees of $5000. Moreau v. Houston General Ins. Co., 386 So.2d 151 (La.App. 3rd Cir. 1980).
For the above and foregoing reasons, the judgment as amended is affirmed insofar as it declares plaintiff to be totally and permanently disabled and awards benefits and interest accordingly. It is reversed insofar as it'denies plaintiff recovery of statutory penalties and attorney’s fees against defendant, Commercial Union Assurance Company. It is hereby ordered that there be judgment in favor of plaintiff and against defendant, Commercial Union Assurance Company, in the amount of $5,000 for attorney fees plus 12% penalties on all weekly benefits due after August 21, 1979. Costs of this appeal are assessed to Commercial Union Assurance Company.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.

. LSA-R.S. 22:658 provides as follows:
“All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney’s fees for the *970 prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney’s fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney’s fees.”