CUTRER, Judge.
This is an appeal in a workmen’s compensation suit from a trial court judgment awarding the plaintiff benefits on the basis of his partial disability. The plaintiff, Roy Douglas Robertson, brought suit to recover workmen’s compensation resulting from an injury to his buttocks incurred when a coworker, as a prank, placed epoxy resin glue on his workbench while he was employed as an electronics technician for Strata-graph, Inc.
This suit was filed against Stratagraph, Inc. and against its workmen’s compensation carrier, Hartford Accident and Indemnity Company (Hartford).
The plaintiff sued for total permanent disability payments, penalties and attorney’s fees. The trial court awarded the plaintiff forty-eight weeks of partial disability benefits subject to certain credits. Penalties and attorney’s fees were denied. We affirm.
The defendants appeal contending that the trial court erred in finding that the plaintiff was partially disabled or, 'in the alternative, finding that the plaintiff was partially disabled for the entire forty-eight week period. The plaintiff answers seeking attorney’s fees.
FACTS
The plaintiff was employed by the defendant as an electronics technician. This job required him to sit for a majority of the time repairing electronic devices.
On June 8,1982, the plaintiff was injured when he sat on some epoxy resin glue which had been placed on his workbench by a fellow employee as a practical joke. The epoxy glue burned through the seat of his pants, causing burns to his buttocks. On that night, he went to Lourdes Hospital emergency room for treatment of his buttocks. They advised him to see a doctor.
In his reasons for judgment the trial judge set forth the facts as follow:
“At the trial, plaintiff testified that he saw Dr. Terry Cromwell the week after the injury. Dr. Cromwell prescribed medication and had plaintiff stay home, remain quiet, and remain off his buttocks. Plaintiff stated that he remained home for three weeks and was paid his full salary by Stratagraph for this time. He returned to work after that time and worked for one to two weeks, even though he had pain while sitting or standing. He testified that he then took his vacation at the end of July, 1982. When he returned from his vacation, he worked for three days and then was laid off on August 13, 1982.
*621 “Plaintiff testified that during this entire time, his buttocks had not healed and were irritated. It was hard to sit due to the irritation, but he returned to work even though the doctor had not discharged him because he had a family to support and obligations to meet. Plaintiff stated that he did his work as best as he could, but it was difficult due to the irritation which impaired his concentration. During this tirñe period he only saw Dr. Cromwell twice, on June 17 and 29, and did not return because he did not like showing the affected areas to doctors.
“Plaintiff stated that he searched for work and accepted a $50.00 retainer from a concern known as Logmasters in September, 1982. Plaintiff then went to work for Logmasters in December, 1982, for a period of one month. Plaintiff further testified that his buttocks area had not healed at that time; in fact, he was in the same amount of pain in December, 1982, as he had been in June, 1982. Plaintiff also stated that Logmasters did not pay him for the one month’s work and he had not been paid to date.
“Plaintiff then testified that he worked for an insurance agency making appointments over the telephone. This involved constant sitting, and after three days, the pain became unbearable, so he returned to Dr. Cromwell on March 24, 1983. He stated that he had not worked since that time.
“Plaintiff stated that at that time the pain had localized near the anal area. He could not sit for more than ten minutes without pain and could not concentrate to work or read. The area was irritating, too painful to itch, and the only comfortable position was laying down without clothing.
“Plaintiff further testified that the area had never fully healed since June 8, 1982. The condition had subsided, but had returned by March 24,1983. At that time, Dr. Cromwell referred plaintiff to a Dr. Richard, who failed to cure the condition. Dr. Cromwell then referred plaintiff to Dr. Daniel Dupree, a dermatologist, who changed the treatment and medication. Plaintiff stated that three weeks later he no longer experienced discomfort and he thought he could return to work without pain. Further, at the time of the trial, he had no pain or discomfort whatsoever. In addition, all of plaintiffs medical bills had- been paid at the time of the trial.
“On the trial of the merits, the depositions of Doctors Dupree and Cromwell, taken for trial purposes, were introduced into the record. Doctor Cromwell stated that, after the initial injury, he saw plaintiff on June 17 and June 29, 1982. On the former date, plaintiff was in pain, but by the latter date the condition had improved remarkably, and plaintiff could return to work the next week. Because plaintiff did not return to see Doctor Cromwell by September 29, the doctor discharged plaintiff on that date, retroactive to June 29, 1982.
“When Doctor Cromwell next saw plaintiff on March 24, 1983, his condition had localized further down toward the anal area, and appeared to have existed at least a few weeks before that date. The area was a moist surface, as if it had multiple blisters that had ruptured or opened. The area was weeping, or drain-*' ing, all the way down to the anus, and plaintiff complained of a burning sensation. At that time plaintiff could not perform a job that would require him to sit down. Plaintiff was referred to Doctor Richard for further treatment.
“Doctor Cromwell next saw plaintiff on April 21, 1983, after plaintiff had seen Doctor Richard. The area had not improved much, and still had a peri-anal rash that was irritated by sitting. Doctor Cromwell stated that plaintiff at that time could probably carry out jobs that involved intermittant sitting, that is, sitting for an hour and walking for an hour. Doctor Cromwell referred plaintiff to Doctor Daniel Dupree, a dermatologist.
“Doctor Cromwell last saw plaintiff on July 19, 1983, after Doctor Dupree had treated the plaintiff. At that time plain *622 tiff still complained of irritation in the buttocks area after long periods of sitting, but the skin looked good and there were no objective findings to substantiate plaintiff's complaint of irritation.
“Dr. Dupree’s deposition indicates that he saw plaintiff on April 28 and May 5, 1983. Dr. Dupree stated that plaintiff had a condition known as lichen simplex ehronicus, whereby the skin thickens and skin markings are accentuated due to repeated scratching and rubbing. The doctor explained that the condition involved an itch/scratch cycle in that the area itches so the patient scratches it, which further thickens and lichenifies the skin, causing increased itching, which encourages scratching. Dr. Dupree stated that the condition was causally related to the epoxy prank as a secondary manifestation or secondary outcome. Sitting down or sweating could cause the area to be irritated, but the condition would not disable plaintiff from engaging in everyday activities.
“On May 5, 1983, Dr. Dupree administered and prescribed cortisone cream. Thereafter, he did not see plaintiff again.”
DISABILITY
The defendants contend that the trial court erred in finding that the plaintiff was partially disabled. They argue that the evidence shows that the plaintiff was merely suffering some residual pain and discomfort and that the pain was not substantial enough to be considered disabling. In the alternative, the defendants argue that, even if the plaintiff did carry his burden of proving that he was disabled for some period of time, the trial court committed manifest error in finding that he was disabled from June 9, 1982 through July 19, 1982.
This court has recently enunciated the applicable law as to these- issues in the following manner:
“ ‘A worker is partially disabled under LSA-R.S. 23:1221(3) when he cannot perform the duties required by his former employment but can still do other work. Scott v. Sears, Roebuck & Company, 406 So.2d 701 (La.App. 2nd Cir.1981). Partial disability also includes the situation where a workman would experience substantial pain when working in his former occupation, but where he could perform other work without experiencing such pain. McBroom v. Argonaut Insurance Company, 370 So.2d 212 (La. App. 3rd Cir.1979), writ denied, 371 So.2d 1342 (La.1979)_ The determination of disability and the existence of substantial pain are questions of fact which may not be disturbed on appeal unless clearly wrong. Newell v. U.S. Fidelity and Guaranty Co., 368 So.2d 1158 (La.App. 3rd Cir.1979).’ ”
King on behalf of King v. Ins. Co. of North America, 442 So.2d 1286 (La.App. 3rd Cir.1983).
The trial court, in its reasons for judgment, resolved the contentions in favor of plaintiff, stating in part as follows:
“At the time of his injury, 90% of plaintiff’s time at work involved sitting at his work bench. Because of the injury to his buttocks, plaintiff could not return to work without substantial pain or discomfort. Even after he was laid off, due to the economic slump, he could not return to a job that involved a great deal of sitting, as evidenced by his three day stay with the insurance company. However, according to plaintiff’s testimony, and the depositions of Doctors Cromwell and Dupree, plaintiff could perform gainful work in other positions of employment that involved intermittent or less sitting, without experiencing substantial pain or discomfort. Accordingly, under Louisiana law and jurisprudence, plaintiff was partially disabled as a result of the June 8, 1982, injury to his buttocks. Louisiana Revised Statute 23:1221; Conlay v. Houston General Insurance Company, 370 So.2d 196 (La.App. 3d Cir. 1979); Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980).
[[Image here]]
*623 “Further, Mr. Robertson’s work-related disability is compensable even though he returned to work after the injury, in July, August, and December of 1982, and in March of 1983, because his work at those times was accompanied by substantial pain and discomfort caused by sitting down, as required by the nature of his work. Irby v. Edwards Rental and Fishing Tools, Inc., 380 So.2d 711 (La. App. 4th Cir.1980); Lucas v. Ins. Co. of North America, 342 So.2d 591 (La. 1977).”
The court recognizes the appropriate standard of review of the trial court’s finding of fact to be as follows:
“On appellate review, the trial court’s factual findings of work-connected disability are entitled to great weight. They should not be disturbed where there is evidence before the trier of fact which, upon the latter’s reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s findings, unless clearly wrong. The reviewing court should not disturb reasonable inferences of fact by the trial court, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable.”
Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300, 301 (La.1979). Great weight is given to the findings of the trial court with regard to the credibility of the plaintiff in a workmen’s compensation proceeding. Joseph v. Martin Mills, Inc., 394 So.2d 722 (La.App. 3rd Cir.1981). We find no such manifest error in the trial court’s findings that the plaintiff was partially disabled for forty-eight weeks.
Plaintiff filed an answer to the appeal seeking attorney’s fees. The trial court found no evidence to establish defendant’s failure to pay was arbitrary, capricious or without probable cause. The determination of whether the employer’s conduct is arbitrary, capricious or without probable cause is a question of fact for the trial court, whose finding will not be disturbed on appeal unless it is manifestly erroneous. We agree with the trial court’s denial of penalties and attorney’s fees.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against defendants-appellants.
AFFIRMED.