465 So.2d 144 (1985)
Leon DEARMON, Plaintiff-Appellant,
v.
LOUISIANA PACIFIC CORPORATION, Defendant-Appellee.
No. 84-173.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1985.
Writ Denied May 3, 1985.
*145 Fuhrer, Flournoy & Hunter, George A. Flournoy, Alexandria, for plaintiff-appellant.
Gaharan & Wilson, Donald R. Wilson, Jena, for defendant-appellee.
Before DOMENGEAUX, KNOLL and KING, JJ.
KING, Judge.
The sole issue presented by this appeal is whether or not the trial court was correct in denying plaintiff's claim for statutory penalties and attorney's fees for the defendant's alleged arbitrary and capricious denial of total and permanent workmen's compensation benefits.
The plaintiff, Leon Dearmon, (hereinafter Dearmon) brought suit to recover workmen's compensation benefits for injuries allegedly sustained to his back when *146 he removed an improperly installed battery from a battery box while he was employed as a mechanic by defendant, Louisiana Pacific Corporation (hereinafter LPC). Dearmon also sought penalties and attorney's fees, provided by LSA-R.S. 23:1201.2, because of LPC's arbitrary and capricious denial of workmen's compensation benefits to him. Four days before trial was held, LPC filed an amended answer admitting that Dearmon was totally and permanently disabled and judicially tendering all benefits due through that date. Thus, there were only two issues before the trial court at the time of the trial on the merits. First, was LPC's original refusal to pay workmen's compensation benefits to Dearmon arbitrary, capricious, or without probable cause? Second, on what date did Dearmon actually become entitled to benefits? The trial judge found that LPC was not arbitrary and capricious in failing to pay benefits, until its judicial tender, and denied Dearmon's demand for penalties and attorney's fees. The trial court also found that Dearmon became entitled to weekly benefits starting February 28, 1983. Dearmon disagrees with both of these findings and appeals. We affirm.

FACTS
On Wednesday, February 23, 1983, Dearmon hurt his back while removing a heavy battery from a battery box out of a sweeper machine operated by co-worker, Emmett Brown. Dearmon claimed that he told his supervisor, Kenneth Strain, about the incident that day. Emmett Brown was unable to testify at trial because he had just undergone surgery, however, LPC agreed to stipulate that had Emmett Brown testified he would have testified that he saw Dearmon hurt his back and that he heard Dearmon tell Strain about the incident. On the other hand, Strain testified that Dearmon complained that a co-worker had improperly installed the battery and as a result, he had to pry it out with a crowbar. Strain also testified that Dearmon said nothing about hurting his back. On the following day, Thursday, Dearmon worked ten hours without complaining to anyone of pain. Dearmon's day off was Friday, and on Saturday morning, he reported to work limping. Strain asked Dearmon about his limp and Dearmon told him that it was bursitis. Dearmon also told a co-worker, Robert Quaid, that his bursitis in his hip was bothering him. On Sunday morning, when he reported for work, Dearmon again told Strain that his leg was bothering him and that he didn't think he could finish the day. Strain told him not to climb the electrostacker he was working on and to let someone else finish the job. Dearmon refused and completed a five hour work day. The next day, Monday, February 28, 1983, Dearmon reported to work and a co-worker, Steve Aldrich, noticed he was acting differently. When Aldrich asked him what was wrong, Dearmon told him that "He thought his bursitis was going up his leg." After working two hours on Monday, Dearmon's leg was hurting so much that he asked Jessie A. Powers, Jr., the assistant personnel manager, for a ride to the gate so that he could drive home. Later that day, Dearmon went to see Dr. Smith, a chiropractor who had helped him with his previous back problems, but, Dr. Smith was unable to relieve his back pain by treatment. On March 6, 1983, Dearmon telephoned Strain to ask for a doctor's form so that he could see an orthopedic specialist. Dearmon testified that this was the first time he requested workmen's compensation benefits and Strain refused to give him a form authorizing the benefits.
On March 7, 1983, Dr. Myron Bailey, Jr., an orthopedic surgeon, examined Dearmon at the St. Francis Hospital emergency room. Dearmon told Dr. Bailey he had hurt his back while lifting a battery and that he was experiencing pain in his back, left hip, and left leg. At the time, Dr. Bailey diagnosed Dearmon's condition as either spinal stenosis syndrome or lumbar disc herniation. On March 15, 1983, Dr. Bailey performed a lumbar laminectomy in an attempt to alleviate Dearmon's pain. Bailey's operative report states "his pre-operative and post-operative diagnosis was spinal stenosis, lumbar L-4 and L-5." Dr. *147 Bailey described stenosis as the development of a spurring or an overdevelopment of bone which protrudes into the neural canal, or into little small canals where the nerve roots come out from the spine, with the protrusion of bone effectively making the canal too small. Dr. Bailey, at the time of his deposition four days before trial, testified that once this condition exists any small injury can trigger an acute syndrome which is similar to what is felt by someone who suffers a ruptured disc.
After the surgery, Dearmon's wife called Strain and told him for the first time that her husband was injured at work while lifting a battery. Dearmon also later called Strain to ask for a workmen's compensation slip and to explain that he hurt his back while lifting a battery on February 23, 1983. Since Dearmon himself originally characterized his condition as non-job related and none of Dearmon's co-employees that Strain talked to knew anything about his alleged accident, LPC, at that time believing spinal stenosis to be a degenerative disease, refused to pay workmen's compensation benefits. LPC then began paying Dearmon benefits under the terms of an employee group accident and sickness plan for nonemployment related accidents and sickness.
As a result of LPC's decision to deny workmen's compensation benefits, Dearmon filed this suit. Thirteen days prior to the scheduled trial date, Dearmon's counsel took the deposition of Dr. Bailey. During the deposition, Dr. Bailey for the first time explained that spinal stenosis is a problem that is often aggravated by trauma. After reviewing Dr. Bailey's deposition, LPC realized that Dearmon's injury could in fact have been caused by an on-the-job accident such as Dearmon related occurred on February 23, 1983. For this reason LPC notified Dearmon's counsel on September 20, 1983, that it would pay all compensation benefits including all weekly disability payments dating back to the on-set of disability. On September 23, 1983, LPC filed an amended answer admitting Dearmon suffered an on-the-job accident entitling him to total and permanent disability benefits and judicially tendered all benefits then due. The trial subsequently ensued over the issue of penalties and attorney's fees.

PENALTIES AND ATTORNEY'S FEES
LSA-R.S. 23:1201.2 provides that a self-insured employer is liable for a 12% penalty (computed on the total amount of the employee's claim) and all reasonable attorney's fees if he fails to pay workmen's compensation within sixty days of receiving written notice of the claim, and his failure to timely pay the benefits is found to be "arbitrary, capricious, or without cause." The statute is inherently penal and must be strictly construed. Robichaux v. Terrebonne Parish Sch. Bd., 426 So.2d 241 (La. App. 1st Cir.1983). An employer is not automatically penalized under this statute for refusing to pay benefits even if ultimately the employer's decision is found to be in error. In order for an award of penalties to be justified, the court must find that the employer's actions were unreasonable. Fazande v. New Orleans Public Service, Inc., 430 So.2d 225 (La.App. 4th Cir.1983). A trial judge's determination of whether the employer was arbitrary, capricious, or without probable cause in denying benefits is a factual finding which will not be disturbed on appeal absent manifest error. Delco v. Heritage Manor Nursing Home, 441 So.2d 309 (La.App. 3rd Cir. 1983), writ den., 443 So.2d 1123 (La.1984).
Dearmon contends that the trial court erred in finding that LPC was not arbitrary, capricious, or without probable cause in originally denying him workmen's compensation benefits. Despite Dearmon's testimony at trial that he immediately told Strain that he had hurt his back lifting a battery on the day it occurred, the judge in the court below apparently disbelieved him and found that both Dearmon and LPC originally thought that his back problems stemmed from a pre-existing degenerative condition. In his written reasons for judgment, the trial court explained his finding of fact as follows:

*148 "The evidence reflects that Leon Dearmon was a maintenance mechanic at the Louisiana Pacific Corporation manufacturing facility at Urania, Louisiana in LaSalle Parish. He was injured on February 26, 1983. He originally viewed his back complaints as bursitis attributable to a pre-existing condition. Louisiana Pacific began payments for medical expenses under an accident and sickness plan it provided for employees who contributed to the cost of the A. and S. coverage.
"It is my view that neither plaintiff nor defendant initially viewed this matter as one covered by the compensation act. I am also of the view that the defendant was confused about its obligation to pay compensation because of plaintiff's previous medical conditions and his own characterization of the physical problem as bursitis. The evidence does not support a conclusion that Louisiana Pacific was arbitrary or capricious or without cause to delay implementation of payments under the compensation act." (Trial Transcript page 183.)
Great weight is given to the findings of the trial court with regard to the credibility of the plaintiff in a workmen's compensation proceeding. Robertson v. Stratagraph, Inc., 458 So.2d 619 (La.App. 3rd Cir.1984); Joseph v. Martin Mills, Inc., 394 So.2d 722 (La.App. 3rd Cir.1981).
When Dearmon first started experiencing back pain on Saturday, February 26, 1983, he told Strain and several of his co-workers his bursitis was acting up. Just as he had done on several previous occasions when his back was bothering him, Dearmon went to see his chiropractor, Dr. Smith. When Dr. Smith failed to alleviate the pain, Dearmon asked for a workmen's compensation medical form for the first time on March 6, 1983 so that he could see an orthopedic specialist. At this time, Dearmon still had not given LPC any information to notify it that his pain was the result of an on-the-job accident. As a result of Dearmon's request for benefits, Strain began an investigation to find out whether Dearmon's co-workers knew anything about an on-the-job accident. However, all that Strain could find out from the fellow workers was that they had heard Dearmon repeatedly say that his bursitis was acting up. It wasn't until sometime after Dearmon underwent surgery on March 15, 1983 that he told Strain that he had hurt his back lifting a battery out of a sweeper at work. The medical reports received at that time by LPC from Dr. Bailey indicated that Dearmon was suffering from spinal stenosis, a degenerative disease. It was not until after Dr. Bailey's deposition shortly before trial that LPC was informed that Dearmon's pain from his spinal stenosis could have been triggered by an on-the-job accident. Once LPC reviewed Dr. Bailey's deposition, it promptly tendered all compensation benefits then due.
In Robichaux v. Terrebonne Parish Sch. Bd., the First Circuit Court of Appeal held that an employer's refusal to pay workmen's compensation benefits was not arbitrary and capricious where the plaintiff did not notify his employer that he injured his back while performing his duties at work. In Robichaux, plaintiff told his supervisor that he was going to the doctor because his back was bothering him but he did not relate the pain to an on-the-job accident. It wasn't until sometime after plaintiff notified his employer that he wasn't returning to work that he told his employer that he hurt his back in a job-related accident. After considering these factors, the court held that the employer's conduct was not arbitrary because it had a serious defense on the issue of whether a compensable accident occurred. Similarly, in the present case, LPC had reasonable doubts that a compensable on-the-job accident occurred, because of Dearmon's original representations to co-workers that he was experiencing bursitis, until Dr. Bailey's testimony at his deposition alerted LPC to the fact that Dearmon's condition could have been triggered by an on-the-job accident as he later claimed.
Dearmon contends that LPC's conduct was arbitrary and capricious because it *149 failed in its duty to investigate Dearmon's condition. In support of this contention, Dearmon cites several cases in his brief which all involve situations where the employer knew that an on-the-job accident occurred, began paying weekly benefits, and then unreasonably terminated the benefits on the basis of an inconclusive medical opinion or on the basis of an optimistic medical opinion which was contraverted by other doctors. See: Patton v. Silvey Companies, 395 So.2d 722 (La.1981); Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976); Alexander v. Department of Culture, Etc., 410 So.2d 1286 (La.App. 3rd Cir.1982); Montgomery v. Commercial Union Assur. Co., 413 So.2d 969 (La.App. 3rd Cir.1982); Cullivan v. Fish Engineering & Const. Co., Inc., 354 So.2d 597 (La. App. 3rd Cir.1977); Williams v. Liberty Mutual Insurance Company, 327 So.2d 462 (La.App. 3rd Cir.1976); Chavis v. Maryland Casualty Company, 307 So.2d 663 (La.App. 3rd Cir.1975), writ den., 310 So.2d 854 (La.1975).
The principle that these cases stand for was recently summarized by this court as follows:
"Where subsequent to an initial optimistic report, an employer receives information indisputably showing a claimant to be disabled, the employer and/or insurer cannot rely upon the early report and solely on its basis avoid penalty and attorney's fees for arbitrary nonpayment of compensation benefits indisputably due the disabled claimant.... The fact that injured employees may not be denied compensation on the basis of inconclusive medical reports is also well established." (Citations omitted.) Alexander v. Department of Culture, Etc., 410 So.2d 1286, 1289, 1290 (La.App. 3rd Cir. 1982).
This principle of law is not applicable to the present case where LPC originally denied coverage because it had good reason to doubt that an on-the-job accident had occurred or that Dearmon's pain could be related to such an accident. Furthermore, when LPC did investigate Dearmon's delayed claim for workmen's compensation, none of his co-workers that LPC interviewed knew anything about the accident but only about Dearmon's alleged bursitis.
Employers are not to be penalized for taking their case to court for judicial resolution of a close factual question. Thompson v. Natchitoches Parish Hosp. Serv. Dist., 335 So.2d 81 (La.App. 3rd Cir. 1976), and cases cited therein, writ den. 338 So.2d 298 (La.1976). Since claimant bears the burden of proof to establish that his disability resulted from a job related accident, defendants were not arbitrary and capricious in originally denying and defending plaintiff's claim where: (1) Dearmon failed to report the accident until several weeks after it had allegedly occurred, (2) Dearmon himself originally characterized his condition as non-job related bursitis, (3) Dearmon was involved in a minor accident, (4) Dearmon continued working for several days after the accident allegedly occurred, and (5) because of LPC's mistake, based on its interpretation of medical reports, as to the possible cause of pain from spinal stenosis.
After reviewing the record, we cannot say that the trial court was manifestly in error in refusing to award penalties and attorney's fees because, until Dr. Bailey's deposition, LPC had sufficient reason to doubt that Dearmon's condition resulted from an on-the-job accident.

DATE PLAINTIFF BECAME ENTITLED TO WEEKLY BENEFITS
Dearmon contends that the trial judge erred in finding that Dearmon's entitlement to workmen's compensation benefits began on February 28, 1983, rather than February 26, 1983. LSA-R.S. 23:1221 provides that permanent and total disability payments shall be paid "during the period of such disability." The trial court's finding that Dearmon became disabled on February 28, 1983, the last day he worked, and thus is entitled to benefits dating back to that date is a finding of fact *150 which will not be disturbed unless it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). Dearmon began complaining of pain on Saturday, February 26, 1983. Considering the fact that Dearmon worked ten hours that Saturday, we cannot say that he was disabled as of Saturday, February 26, 1983. The next day Dearmon voluntarily completed a full five hour shift on his own despite the fact that he was told by his supervisor, Strain, to let someone else help him finish the job he was working on. It was not until the following Monday, February 28, 1983 that Dearmon's pain became substantial enough that he was forced to leave work just two hours after he had arrived. Therefore, we find that the trial judge was not clearly wrong in finding that Dearmon's entitlement to workmen's compensation benefits started on February 28, 1983.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by plaintiff-appellant.
AFFIRMED.