640 So.2d 548 (1994)
Theresa GUIDRY, Plaintiff-Appellee,
v.
DOCTORS' HOSPITAL OF OPELOUSAS, Defendant-Appellant.
No. 93-1233.
Court of Appeal of Louisiana, Third Circuit.
May 4, 1994.
*549 R. Hamilton Davis, Lafayette, for Theresa Guidry.
Sidney Daniel Meeks, H. Philip Radecker, Jr., New Orleans, for Doctors' Hosp. of Opelousas.
Before YELVERTON and THIBODEAUX, JJ., and CULPEPPER[*], J. Pro Tem.
YELVERTON, Judge.
Theresa L. Guidry had an on-the-job accident about July 1, 1989 while she was working for Doctors' Hospital of Opelousas as a Licensed Practical Nurse (LPN). She was paid workers' compensation weekly benefits of $106.15, together with all medical expenses, until November 14, 1991, when benefits were terminated. She filed a claim, and the case was heard on March 3, 1993. The hearing officer held that Mrs. Guidry had continued to be disabled since she was terminated and that she was entitled to temporary total disability benefits in the amount of $106.15 a week since termination, and ordered that the employer continue to pay for medical treatment and mileage for travel to and from physicians for related medical treatment. The hearing officer also found that the defendants were arbitrary and capricious in the handling of the claim and awarded $3,000 in attorney's fees, as well as penalties. The hearing officer found that the insurer did not make a reasonable effort to ascertain Mrs. Guidry's exact medical condition before benefits were terminated. The hearing officer also held that, even after it found out as a result of an examination conducted by its own doctor, shortly before trial, that Mrs. Guidry was and had been continuously disabled, it arbitrarily failed to reinstate benefits.
The employer and insurer appeal, raising three errors. The two assignments that address the merits deal with proof of disability and arbitrariness. We will deal with these two assignments first and mention the third at the conclusion of this opinion. The same standard of appellate review applicable to factual findings of district courts is also applicable to the factual findings of an administrative body or hearing officer. In workers' compensation cases, the appropriate standard of review to be applied by appellate courts is the "manifest error-clearly wrong" standard. Alexander v. Pellerin Marble & Granite, 630 So.2d 706 (La.1994). A determination of whether a defendant should be cast with penalties and attorney's fees is *550 essentially a question of fact. McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App. 2d Cir.1991). We affirm.

DISABILITY
Mrs. Guidry had a very bad disc herniation. It completely ruptured and a fragment not only ruptured out into the nerve but moved and migrated along the spinal canal. Dr. Thomas Bertuccini, a neurosurgeon, performed a microdiskectomy in October at L-4, 5. The herniation was so bad that, on a scale of one to ten, he rated it eight or nine.
Mrs. Guidry testified that she improved after surgery for several months but that during the summer of 1990 it began to get worse. It was then that her employer sought to create a job for her. She had been working at the Women's Center of Doctor's Hospital before her accident, and her work consisted of nursery, labor and delivery, and post partal services. Doreen McSpadden, a vocational consultant, was hired in May 1991 to facilitate her return to work in a modified job. She testified that she met with Mrs. Guidry and reviewed Dr. Bertuccini's work restrictions. After that she met with the hospital personnel and together they completed a job analysis of a proposal for her to return to work.
Dr. Bertuccini's notes from a May 10, 1991 evaluation indicated that Mrs. Guidry had pain symptoms that waxed and waned, and that she was not able to tolerate prolonged standing, walking or sitting, and he did not feel that she was able to return to work even on a light duty basis. He agreed that she should not resume her former employment. He felt she had reached a plateau and that there was nothing further to be done from a surgical or treatment standpoint, and he discharged her.
In Dr. Bertuccini's files is a note he made dated June 28, 1991. It said:
Doreen McSpadden, rehabilitation [vocational] consultant, contacted my office today regarding Mrs. Guidry. She said a job was available for Mrs. Guidry in a newborn nursery, part-time, feeding and caring for the infants with lifting restricted to up to about 10 pounds. In response to her request, I stated that I did feel Mrs. Guidry could be released to this kind of duty, of course, dependent on her symptoms.
The hospital, based on Doreen McSpadden's recommendation, offered her a modified job with two 12-hour shifts a week. Mrs. Guidry declined the offer.
Mrs. Guidry testified that Dr. Bertuccini had told her that, before she went back to work, she should try to simulate what job activities and obligations they might have ahead of time, in order to see what she could tolerate. At a later deposition, Dr. Bertuccini confirmed this advice. He explained that he had suggested she not start off working with a baby, but that she could simulate it with a weight or a doll or something, and sit in a chair for a while maybe reading a book, and try to get up with something in her arms to see if she could tolerate it. In her situation, he added, that would be a way of her testing to see what she could do safely. He thought that was the best way to make that determination before starting employment.
Mrs. Guidry testified at the hearing of this case that she underwent a two week simulation at her home, following Dr. Bertuccini's advice. She said that at the end of that two weeks she did not think that she could do the job and she told Doreen McSpadden that she could not do it.
The hospital subsequently discontinued weekly benefits. In October 1991, she filed her claim with the workers' compensation office.
In its argument that the hearing officer committed error in her finding of continuing disability, the defendants rely primarily on the language of Dr. Bertuccini's file note of June 28, 1991, quoted above, which ended with the statement "I stated that I did feel Mrs. Guidry could be released to this kind of duty, of course, dependent on her symptoms." At Dr. Bertuccini's deposition taken on March 10, 1992, he explained what he meant by that statement. He said that the last time he saw her was on May 10, 1991, and that she was improved but still having right leg pain which was worsened with prolonged walking or sitting. He said she indicated *551 to him that she did not feel that she could go back to work even on a light duty basis because of these symptoms. She also had pain in her low back. He said that as of May 10, 1991 he thought it was reasonable that she attempt to try returning to work, that is, on a light duty basis, but he had to rely on her reports regarding any symptoms she had and had to be guided by what she told him in terms of what he thought was reasonable for her. Explaining the phrase "dependent on her symptoms", he said that a doctor can only assess pain by what the patient says. He could not say whether Mrs. Guidry could do the job in the nursery that was designed for her or not.
He was asked again at this deposition if he thought Mrs. Guidry had reached maximum medical improvement and he responded that if she was continuing to have pain, there were other treatment approaches that could be tried. At one point he said "I'm not too surprised that she has got some residual symptoms based on what I saw intraoperatively."
Dr. Bertuccini's testimony on March 10, 1992 made it quite clear that he was then aware she was continuing to have symptoms and that there was a serious question of whether she could perform the modified job. The defendants still did not reinstate benefits.
A year later, just before the hearing, on February 18, 1993, Dr. Michel Heard, an orthopedist in Lafayette, saw her at the request of the defendants. She related to him her accident in June 1989 and her surgery in October 1989. She stated that the surgery helped for about nine months but then she started getting worse. He took x-rays. They indicated that she did have the previous surgery, plus she had what is called a transitional vertebra or abnormal joint articulation called a transitional vertebra on the left at the lumbo sacral region. He also found severe degeneration or narrowing of the disc spaces with collapse of the disc spaces at the L2-3 and L3-4 region. Looking over Dr. Bertuccini's operative report, Dr. Heard stated that there had been a very large herniated disc with what is called a migrated fragment. He described that as "the extreme" of a disc herniation. He reviewed a job analysis prepared by the defendant, describing the job of an LPN in an infant nursery, part-time, two 12-hour shifts per week, restricted to nursery, feeding and care of infants only, where the patient would be allowed to intermittently sit, stand and walk and would have assistance from personnel if anything heavy would need to be lifted other than a newborn infant. His opinion was that he would not release her at that time for that work or any other until he found out the basis of her pain and got it corrected.
There is no manifest error in the hearing officer's finding that the claimant proved she was temporarily, totally disabled continuously up to the date of trial. In fact, there is no evidence to the contrary.

ARBITRARY AND CAPRICIOUS
Mrs. Guidry testified that she followed her doctor's instructions, simulated the modified work activity, found that she could not do it because of her symptoms, and then told Mrs. McSpadden that she could not take the job. She testified that she never heard from Mrs. McSpadden again. It is clear that Mrs. McSpadden did not take into consideration Mrs. Guidry's continuing symptoms. She admitted that she never questioned Mrs. Guidry regarding her symptoms or her pain tolerance. She admitted that Mrs. Guidry had told her that she could not do the heavy housework around the house and that her husband had to do the jobs. Also, Mrs. McSpadden did not have all of Dr. Bertuccini's reports. She did not consider his report written in May of 1991 or one written on November 14, 1991 wherein the doctor noted that Mrs. Guidry continued to have recurrent low back and leg pain. She never became aware of Dr. Bertuccini's deposition which was taken on March 10, 1992, and which clearly reflected an awareness of her continuing symptoms. She was not aware of the report of Dr. Heard whose examination was made at the request of the defendants indicating that Mrs. Guidry could not do that job, or any job.
In short, the evidence is clear that Mrs. Guidry remained disabled and could not do the modified job that was offered to her, on account of the symptoms that she continued *552 to experience. The vocational consultant, Mrs. McSpadden, relied exclusively on Dr. Bertuccini's file note dated June 28, 1991 for discontinuing benefits, and the defendants rely on that same file note as a defense against the finding that they were arbitrary and capricious. The evidence clearly shows that throughout all relevant times Mrs. Guidry was suffering symptoms which disabled her from doing the modified job. A simple inquiry would have brought that fact to light. No effort was made by Mrs. McSpadden to cover that aspect of the situation, and we cannot say that it was clear error for the hearing officer to find that the defendants were arbitrary and capricious in discontinuing and in failing to reinstate benefits.

ORAL ARGUMENT BEFORE THE HEARING OFFICER
The appellants complain that the hearing officer first scheduled, then canceled oral arguments before rendering her decision at the trial level. There is no record evidence that this happened. Even if it did, our review of the case on the merits is still subject to the manifest error-clearly wrong standard.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[*] Honorable William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.