663 So.2d 393 (1995)
Hayward SINEGAL, Plaintiff-Appellee,
v.
ABLE GLASS COMPANY, INC., Defendant-Appellant.
No. 95-10.
Court of Appeal of Louisiana, Third Circuit.
October 11, 1995.
*394 Thomas Anthony Budetti, Lafayette, for Hayward Sinegal.
Christopher R. Philipp, Lafayette, for Able Glass.
Before DOUCET, C.J., and LABORDE[*], WOODARD, AMY and SULLIVAN, JJ.
WOODARD, Judge.
The issues on appeal are whether defendant was arbitrary and capricious in handling plaintiff's claim and whether the hearing officer abused her discretion in awarding plaintiff $3,000.00 in attorney's fees.

FACTS
Plaintiff, Hayward Sinegal, who was employed by defendant, Able Glass Company, Inc., injured his chest and lower back in the course of his employment on July 21, 1992 when the brakes of the company truck he was driving failed, causing him to smash into the rear end of another vehicle. Able Glass paid Sinegal $202.45 per week in temporary total disability (TTD) benefits from the date of the accident until April 9, 1993, when it received information from Dr. Clifton W. Shepherd, Jr., its orthopedic surgeon, that Sinegal had been "released from care without restrictions."
Sinegal subsequently brought suit against Able Glass, requesting (1) that his TTD benefits and medical expenses be reinstated and (2) that he be awarded attorney's fees and penalties. On November 3, 1993, Able Glass reinstated Sinegal's TTD benefits retroactive to April 9, 1993 after Dr. James Lafleur, an orthopedic surgeon who was appointed by the Office of Workers' Compensation to conduct an independent medical examination of Sinegal, opined that Sinegal still suffered from a compensable disability. The case was tried on July 7, 1994. The hearing officer rendered judgment on September 9, 1994 in favor of Sinegal, finding that Able Glass was arbitrary and capricious for failing to (1) properly investigate Sinegal's disability status when his benefits were terminated and (2) authorize an MRI and treatment recommended by Dr. Louis Blanda, Sinegal's orthopedic surgeon. The hearing officer awarded Sinegal $2,000.00 in penalties and $3,000.00 in attorney's fees.
Able Glass appeals from that judgment and asserts that the hearing officer erred in finding that it was arbitrary and capricious in handling Sinegal's claim. Sinegal answered the appeal and asserts that the hearing officer erred in awarding only $3,000.00 in attorney's fees. He also requests additional attorney's fees for time spent pursuing this appeal.

LAW
It is well settled that a workers' compensation claimant is not entitled to attorney's fees and penalties unless the withholding or terminating of benefits is found to be arbitrary, capricious or without probable cause. La.R.S. 23:1201; 1201.2. Whether or not the termination of benefits is arbitrary, capricious or without probable cause depends primarily on the facts known to the employer at the time of its action. Miles v. F.D. Shay Contractor, Inc., 626 So.2d 74 (La.App. 3 Cir.1993). An employer is required to make a reasonable investigation to ascertain the *395 claimant's exact medical condition before benefits are terminated. Johnson v. Insurance Company of North America, 454 So.2d 1113 (La.1984). A hearing officer has great discretion in the award of attorney's fees and penalties, and his or her decision will not be disturbed by an appellate court unless it is clearly wrong. Dietz v. Guichard Drilling Company, 626 So.2d 79 (La.App. 3 Cir.1993).
After the accident, Sinegal was treated by Dr. Michael E. Boustany, a general practitioner, for approximately five months. On January 11, 1993, Dr. Boustany diagnosed Sinegal with a strain of the lumbar and cervical musculature and a contusion of his chest wall, because he found that Sinegal's cervical area was "tense," both of his trapezius muscles were sore and tender, and his lumbar area was tender to palpation. Dr. Boustany gave Sinegal robazin for muscle relaxant, ansaid for pain, and myoflex cream to apply to his injured areas and recommended that he receive physical therapy three times a week. He noted that if Sinegal's lower back pain did not get better "shortly," he would refer him to an orthopedic surgeon for "evaluation." Finally, Kathy Giovingo, a claims adjuster assigned to handle Sinegal's claim on behalf of Able Glass, testified that she received this medical report from Dr. Boustany on January 19, 1993.
On February 16, 1993, Giovingo acknowledged that she received notice from T. Michael Jordan, Sinegal's former attorney, that Sinegal was going to see Dr. Blanda to seek relief from the continuing pain in his lower back. At about the same time, Sinegal was examined by Dr. Shepherd, who recommended that he undergo a MRI and CT scan of his lower back. The MRI came back "normal," but the CT scan revealed that Sinegal had a "moderate degree of osteoarthritic changes of the facets at 5-1." Dr. Shepherd sent a medical report to Giovingo on March 10, 1993 in which he indicated that (1) Sinegal still complained of pain in his lower back; (2) there was apparent tenderness at the lower half of the lumbar musculature; (3) supine straight leg raise test caused severe pain at 10 degrees bilaterally; and (4) the Patrick's and Lasegue's tests caused moderate to severe pain at less than 25% completion bilaterally. Notwithstanding, Dr. Shepherd opined that Sinegal could be released from care "without any restrictions."
On March 18, 1993, Sinegal was examined by his orthopedic surgeon, Dr. Blanda. Dr. Blanda noted that Sinegal was still suffering from pain in his lower back area and opined that he should "undergo a more formal aggressive physical therapy program." Dr. Blanda placed Sinegal on orudus for pain, scheduled another appointment in 3 to 4 weeks, and noted that if there were no improvement, he would consider "other evaluation."
Giovingo testified that she terminated Sinegal's benefits on April 9, 1993 after she reviewed the medical reports of Drs. Boustany and Shepherd and the results of the MRI and CT scan. Giovingo admitted in the following testimony that she knew that Sinegal was being treated by Dr. Blanda at the time she terminated benefits but she made no effort to contact Dr. Blanda to obtain his reports and diagnosis:
Q. I believe you had testified earlier and in your deposition that Dr. Blanda's report of March 18, 1993 was not received in your office until June 25th, 1993, correct?
A. Yes, sir.
Q. Yet in March of 1993, even before Mr. Sinegal saw Dr. Blanda, you knew that he was seeing Dr. Blanda in March of 1993?
A. Yes, sir.
Q. Correct?
A. Yes, sir.
Q. At no time, between March 18th, 1993 and June 25th, 1993, did you or anybody else on your behalf correspond to Dr. Blanda to determine his opinion?
A. No, sir.
* * * * * *
Q. Instead, between March 18th, 1993, the date my client saw Dr. Blanda, his treating physician which you were aware of, and the date you received his report approximately three months later, no one at Able Glass Company did anything at all to determine the opinion of Dr. Louis Blanda?

*396 A. Not to my knowledge.
Clearly, Able Glass did not reasonably investigate to ascertain Sinegal's exact condition before his benefits were terminated. The record substantiates that throughout the relevant times, Sinegal was suffering from disabling symptoms. A simple inquiry to Dr. Blanda's office would have brought this fact to light. However, there was none. Thus, we cannot say that the hearing officer was clearly wrong in finding that Able Glass was arbitrary and capricious in terminating Sinegal's benefits. See Guidry v. Doctors' Hospital of Opelousas, 93-1233 (La.App. 3 Cir. 5/4/94); 640 So.2d 548.
Since we have found that Able Glass was arbitrary and capricious in terminating Sinegal's benefits, we do not need to address whether Able Glass was also arbitrary and capricious in failing to approve testing and treatment recommended by Dr. Blanda.

ATTORNEY FEES
The amount of an award of attorney's fees is committed to the discretion of the hearing officer and will not be disturbed absent a showing of an abuse of discretion. Frazier v. Conagra, Inc., 552 So.2d 536 (La. App. 2 Cir.1989), writ denied, 559 So.2d 124 (La.1990). The actual value of the attorney's fees need not be proven. Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65 (La. 1983). The hearing officer is allowed to call upon his or her experience and expertise in determining how much time and effort a lawyer has put into the preparation of the case. Alfred v. City of Eunice, 503 So.2d 1131 (La.App. 3 Cir.), writ denied, 505 So.2d 63 (La.1987). We find that the hearing officer abused her discretion in only awarding $3,000.00 in attorney's fees. The record substantiates that Sinegal's attorney spent fifty-five hours pursuing his claim which included extensive meetings with Sinegal discussing the status of his case; correspondence to various healthcare providers, opposing counsel, and the Office of Workers' Compensation regarding Sinegal; preparation of pleadings, discovery, deposition notices, and a motion to compel; taking the depositions of Sinegal and Giovingo; reviewing numerous medical exhibits; attending several Pre-Trial conferences; drafting pre-trial and post-trial memorandums; and preparing for a one day trial. We conclude that the record supports an award of attorney's fees of $7,500.00, especially in light of the results obtained by Sinegal's attorney. See Guillory v. Stone & Webster Engineering Corporation, 545 So.2d 605 (La.App. 3 Cir.1989).
An increase in attorney's fees is awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of the plaintiff's attorney, provided that the plaintiff requests such an increase. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736 (La. App. 1 Cir.), writ denied, 553 So.2d 466 (La.1989). In the case sub judice, a review of the additional work necessitated by this appeal reveals that an award of $2,000.00 in attorney's fees is warranted. See Poirrier v. Otis Engineering Corporation, 602 So.2d 207 (La.App. 3 Cir.1992).

CONCLUSION
For the foregoing reasons, the judgment of the hearing officer is amended and Sinegal is awarded $9,500.00 in attorney's fees for all work performed at the hearing level and on appeal. In all other respects, the hearing officer's judgment is affirmed. Costs of this appeal are assessed against Able Glass Company, Inc.
AFFIRMED AS AMENDED.
DOUCET, C.J., dissents and assigns written reasons.
AMY, J., dissents and assigns written reasons.
DOUCET, C.J., dissenting.
"Whether or not a termination of benefits is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer or insurer at the time of its action. Brown v. Manville Forest Products Corp., 565 So.2d 496 (La.App. 2d Cir.), writ denied, 567 So.2d 1127 (La.1990)." Miles v. F.D. Shay Contractor, Inc., 626 So.2d 74, 78 (La.App. 3 Cir.1993).
*397 The facts that the adjuster had before her at the time of her action formed a reasonable basis for her decision to terminate Sinegal's benefits. Dr. Shepherd, in his report of February 17, 1993, recommended that an MRI and CT scan be done of Sinegal's lower back. He stated that the examination of Sinegal's shoulder was completely normal. Finally, he said that his opinion would depend on the outcome of the MRI and CT scan. The tests were done on March 3, 1993. The CT scan showed arthritic changes of the facets. The MRI study was normal. On March 10, 1993, Dr. Shepherd issued a report in which he reviewed the test results. He found that the test results showed only mild arthritic changes. He stated that: "This would not account for his complaints of pain, and his examination has numerous inconsistencies. These arthritic changes are consistent with a man of his age. I think he can be released from care without restrictions." On March 18, 1993, Dr. Louis Blanda examined Sinegal. Dr. Blanda recommended that Sinegal undergo aggressive physical therapy and prescribed medications. He further recommended another evaluation if Sinegal did not improve. He noted essentially the same impression of the test results as had Dr. Shepherd. It is important to note that he never suggested that Sinegal could not work. Nor did he assign Sinegal a disability rating.
This court in Miles v. F.D. Shay Contractor, Inc., 626 So.2d at 78, explained that:
[W]hen an insurer's termination of compensation is based upon competent medical evidence, the action is not arbitrary and capricious. Savant, supra, 502 So.2d at 179. Furthermore, an insurer is not automatically penalized under these statutes for terminating compensation benefits even if ultimately the insurer's decision is found to be in error. Dearmon v. Louisiana Pacific Corp., 465 So.2d 144 (La.App. 3d Cir.), writ denied, 467 So.2d 1136 (La. 1985). The statutes authorizing penalties and attorney's fees where the insurer is arbitrary, capricious, or without probable cause in terminating compensation benefits are penal in nature and must be strictly construed so that insurers are not penalized for contesting a close factual question in a workers' compensation proceeding and relying on valid defenses. Dearmon, supra; Landry v. Central Indus., Inc., 592 So.2d 478 (La.App. 3d Cir.1991), writ denied, 593 So.2d 381 (La.1992); Marcel v. Craig Guidry Construction Co., 511 So.2d 48 (La.App. 3d Cir.1987). [Emphasis added.]
Where termination of benefits is based on a legitimate dispute concerning the extent of disability, penalties and attorney's fees will not be awarded. Belaire v. L & L Oil Co., 93-1198 (La.App. 3 Cir. 5/4/94); 636 So.2d 1177. Given the reports which the adjuster had before her in this case, including that of Dr. Blanda, I do not believe that she was arbitrary and capricious in terminating Sinegal's benefits. The reports supply a reasonable basis for her actions. At most, it appears that there existed a legitimate dispute as to the extent of Sinegal's injury. To award penalties and attorney's fees is to penalize the employer for contesting a close factual question and for relying on valid defenses. As a result, I would reverse the trial courts award of penalties and attorney's fees. Accordingly, I respectfully dissent from the majority in this case.
AMY, Judge, dissenting.
I respectfully disagree with the majority's affirmation and amendment of the hearing officer's award of statutory penalties and attorney's fees.
When worker's compensation benefits are not paid because the claimant's entitlement to such benefits is reasonably controverted, a claimant is not entitled to statutory penalties. La.R.S. 23:1201(E). A claimant is only entitled to attorney's fees when the failure to pay benefits is arbitrary and capricious. La.R.S. 23:1201.2. When the employer has a reasonable basis to believe that compensation benefits are not due the employee, a claimant's entitlement to such benefits is reasonably controverted and an employer's decision to terminate such benefits is not arbitrary and capricious.
With respect to Able Glass's termination of benefits on April 9, 1993, the medical records possessed by Kathy Giovingo, claims adjustor, when she made the decision to suspend *398 Hayward Sinegal's benefits were the medical reports of Dr. Boustany and Dr. Shepherd and the results of an MRI and CT scan:
(1) Dr. Boustany's January 11, 1993, report does not state that Mr. Sinegal is disabled or unable to return to work.
(2) The MRI was normal.
(3) The radiologist's impression from the CT scan was positive for osteoarthritic degenerative changes.
(4) After reviewing the MRI and CT scans, Dr. Shepherd wrote in his March 10, 1993, report: "He [Mr. Sinegal] has had a recent MRI and CT scan. The MRI is normal. The CT scan was read by the radiologist as showing moderate arthritic changes of the L5-S1 facet joint. I reviewed the films and respectfully think that this has been over-interpreted. The Gantry level on the CT scan appears to be uneven. He might have some mild arthritic changes. This would not account for his complaints of pain, and his examination has numerous inconsistencies. These arthritic changes are consistent with a man of his age. I think he can be released from care without restrictions."
When Mr. Sinegal's benefits were terminated, Ms. Giovingo testified that she was aware that Mr. Sinegal had requested medical treatment from Dr. Blanda, but that she had no medical information from Dr. Blanda. Dr. Blanda's March 18, 1993, medical report was date stamped June 25, 1993, by Ms. Giovingo's office and the hearing officer specifically found that the report was not received until June 25, 1993. Under the facts of this case, there was a reasonable basis for Able Glass to believe that Hayward Sinegal was not entitled to worker's compensation benefits. Accordingly, Able Glass was not arbitrary and capricious in terminating benefits.
With respect to the failure to reinstate benefits after Dr. Blanda's report was received on June 25, 1993, until November 3, 1993, Ms. Giovingo testified that she did not consider Dr. Blanda's report to indicate that Mr. Sinegal was disabled. Ms. Giovingo explained at the hearing that she did not believe that a conflict existed over whether Mr. Sinegal was disabled. She testified that she believed that the only conflict that existed between Dr. Shepherd's report and Dr. Blanda's report was whether Mr. Sinegal was entitled to additional physical therapy. She testified that it was for this reason that she requested an independent medical examination with the Office of Worker's Compensation on August 20, 1993. A review of Dr. Blanda's March 18, 1993, report demonstrates that there is no mention of disability in this report. At trial, Ms. Giovingo testified that she never received Dr. Blanda's July 28, 1993, report. Mr. Sinegal did not offer any evidence to the contrary. After a pre-trial conference and before the independent medical examination, benefits were reinstated and Mr. Sinegal was issued a lump sum payment on November 3, 1993. In light of these facts, I am unable to conclude that Able Glass' failure to reinstate benefits until November 3, 1993, was unreasonable or arbitrary and capricious.
Accordingly, I believe that the hearing officer erred in assessing statutory penalties and attorney's fees and that the award should be reversed.
NOTES
[*] Judge P.J. Laborde, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.