394 So.2d 722 (1981)
Chester JOSEPH, Plaintiff-Appellee,
v.
MARTIN MILLS, INC., et al., Defendants-Appellants.
No. 8021.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1981.
*723 Douglas C. Longman, Jr., of Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, for defendants-appellants.
Glenn J. Armentor, Lafayette, for plaintiff-appellee.
Before CULPEPPER, GUIDRY and CUTRER, JJ.
CUTRER, Judge.
Plaintiff, Chester Joseph, filed suit against his employer, Martin Mills, Inc., and its workmen's compensation carrier, The Travelers Insurance Company, alleging that he sustained a back injury in the course and scope of his employment. The trial court found that the plaintiff did suffer such an injury and was disabled. The trial court awarded one hundred weeks of compensation at $130.00 per week for the permanent impairment of a physical function under the provisions of LSA-R.S. 23:1221(4)(p). The judgment included an award of medical expenses but this portion of the judgment is not at issue in this appeal.
Defendants' appeal presented two issues:
(1) The trial court erred in finding that the plaintiff sustained an injury in the course and scope of his employment; and *724 (2) Alternatively, defendants contend that plaintiff is only entitled to temporary total disability from the date of the accident, April 1978, until December 18, 1978. Defendants contend that plaintiff was fully recovered on the latter date.
WHETHER PLAINTIFF WAS INJURED IN THE COURSE AND SCOPE OF HIS EMPLOYMENT
Plaintiff was employed by Martin Mills as a dryer operator in the bleach and dye department. Plaintiff testified that during the month of April 1978, he was pushing a heavy cart filled with cloth when some of the cloth became entangled in one of the wheels. As he attempted to push the cart under these conditions he stated that he twisted his back, causing the injury in question. He further stated that he reported the injury to a supervisor who asked him to work for the remainder of the day, which he did. Plaintiff further testified that, due to pain, he went to see his family physician, Dr. Louis Weinstein, the day following the accident. He told the physician that he had hurt his back at his place of employment.
Plaintiff's testimony as to the occurrence of the accident was corroborated by his brother, Linton Joseph, who was employed at Martin Mills at the time of the accident. Also, plaintiff's wife and daughter testified that plaintiff came home from work in pain and had to be taken to the physician the following morning.
The defense relies heavily on the fact that plaintiff's time cards, introduced into evidence, show that the last day he worked at Martin Mills was Saturday. While plaintiff worked the day shift, he alleged the accident took place on his last day of work at Martin Mills at about 10:00 P.M. The trial court recognized this discrepancy but was not greatly disturbed by it. The court was, no doubt, cognizant of the fact that the time cards have been in the custody of the defendants since the time of the accident in April 1978 until the time of trial in March 1980. Also, the custodian of such personnel records has only been employed in that position for some three months before the trial. The circumstances under which these were introduced do not lead us to believe they were especially reliable. In any case, the exact date of the accident is not so crucial so long as it occurred in the course and scope of plaintiff's employment.
Defendants further contend that since the supervisor, Gerald Caulk, neither filed an accident report nor remembered the accident, the trial court was clearly erroneous in accepting plaintiff's testimony. The testimony of plaintiff and his brother, Linton, as well as some defense witnesses, indicated that Martin Mills is an extremely noisy and fast moving place. It is logical to conclude that, where one continues working until the end of his shift after such an accident, only those looking directly at him at the time of the accident, or those informed by him of the accident, would know about it. It is also possible that a busy supervisor would fail in his duty to fill out an accident report, especially where the worker finishes his shift. Plaintiff and his brother both testified that he reported the accident.
In its reasons for judgment, the trial court made the following findings:
"... In court Joseph's testimony showed that he is 51 years of age, has always been a common laborer, he is illiterate, uneducated and lacks sufficient wile or wisdom to fabricate his story. In fact, I find him to be a truthful witness.

"There is an admitted discrepancy about the time of the accident. Joseph testifies that it occurred on the night shift and that he did not do any work at the plant after the accident occurred, yet the company's records show that the last day that Joseph worked was on a Saturday in the morning and slightly into the afternoon. I have considered this discrepancy and cannot explain it, yet I accept the fact that the accident did occur; whether it was on the night shift or the morning shift is something I consider to be of no great significance. What is true and corroborated is that the day following *725 the accident or the day after that Joseph was taken to his physician, Dr. Weinstein, in Arnaudville for treatment and that his back was in such a condition that Dr. Weinstein had to go to the car to administer to him....."

Great weight is given to the findings of the trial court with regard to the credibility of the plaintiff in a workmen's compensation proceeding. Knight v. Southeastern Chemical Corp., 344 So.2d 67 (La.App. 4th Cir. 1977). We find no error in the trial court's acceptance of plaintiff's version of the facts of this case and the conclusion that plaintiff was injured during the course and scope of his employment.

DISABILITY
The defendants contend that, in the event that the court should find that plaintiff was injured in the course and scope of his employment, he was only entitled to temporary total disability from the date of the accident until December 18, 1978.
In its reasons for judgment the trial court, after finding a compensable injury and disability, commented as follows:
"The recovery in this case is governed by R.S. 23:1211 [sic], which was the last amendment to the compensation statute in 1975. This accident happened in 1978, therefore its provisions are pertinent.

"Subsection (1) provides the formula for an accident that has produced `temporary total disability', and I find that although Joseph was temporarily totally disabled, the evidence is insufficient to determine that period between the time of the accident and the time that he went to work for Mr. Angelle.....

"Subsection (2) provides for compensation for an injury producing permanent total disability to an employee and this Court finds that Joseph is not permanently totally disabled.

"Subsection (3) provides for an injury-producing partial disability of an employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, et cetera. Joseph is in fact performing lighter work for Mr. Angelle compared to the work that he did with Martin Mills. This section would seem to apply but using the formula in the section for computation he would receive 662/3% of the difference between the wages he was earning at the time of the injury and any lesser wages which he actually earned thereafter. In fact, he is receiving more wages now than he was at the time of his employment with Martin Mills, so, it would seem that he would have no recovery at all under this section; however, I cannot believe that this was the intention of the legislature. It is obvious that the compensation act was amended to provide additional benefits to the employees, not to detract from them. Lopez v. Comm. Union, 353 So.2d 431 (1977).
"I have to conclude that Joseph's recovery should be under Subsection (4)(P), which provides that:
`In cases not falling within any of the provisions already made ... where the usefulness of physical function is seriously permanently impaired, the Court may allow such compensation as is reasonable and in proportion to the compensation herein above specifically provided in the cases of specific disability, not to exceed 662/3% of wages during 100 weeks.'
"The Court will apply that section and award Joseph compensation payments not to exceed 662/3% of wages during 100 weeks."
We must note that neither the issue of partial disability nor permanent total disability is before this court. The plaintiff did not appeal the award of one hundred weeks of compensation. Since partial disability (450 weeks) or permanent total disability could have the effect of increasing the award, we are not called upon to decide the issues of partial or permanent disability.
This brings us to the issue of whether the recovery should be awarded for temporary total disability or for the loss of a function under LSA-R.S. 23:1221(4)(p).
As we approach this issue, we will first review the basic facts in this regard:
*726 Immediately following the accident in April 1978, plaintiff consulted Dr. Louis Weinstein, a general practitioner. This physician saw plaintiff for the first time on April 17, 1978, complaining of back pain. The doctor diagnosed it as a back strain and he was treated conservatively with medication. Plaintiff developed a stomach ulcer problem as of April 21, 1978, which was conservatively treated by Dr. Seldon J. Deshotels, a general surgeon. Dr. Weinstein continued to see plaintiff intermittently for his back complaints, treating same with heat treatments and medication.
Dr. Deshotels operated on plaintiff in August 1978 for the ulcer condition. Plaintiff's recovery from the ulcer problem was uneventful and, according to Drs. Weinstein and Deshotels, did not create any permanent loss of function. Dr. Weinstein stated that the ulcer condition could have been brought on by the medication given for the back injury.
Dr. Weinstein continued to see plaintiff thereafter. On January 4, 1979 he discharged plaintiff to return to work. The plaintiff went back to Martin Mills to go to work but was informed that they had nothing available at the time. Plaintiff began drawing unemployment compensation during the first part of 1979. Thereafter, in May 1979, plaintiff obtained employment with Lennie Angelle Backhoe Rentals, a heavy equipment concern. Plaintiff performed the job of greasing the equipment, fueling same and various other odd jobs. Plaintiff continued in this job until the time of trial. Plaintiff earned $4.50 per hour as an employee with Angelle. This was slightly more than he was earning at the time of the accident at Martin Mills.
Plaintiff was hospitalized for a short time, beginning on May 26, 1979, for lumbosacral strain. Plaintiff testified that his hospitalization was a result of back problems that had persisted since the original accident. The hospital records report differently, however. They state that plaintiff reported that about a week before the admittance he "wrenched his back" as he reached back for a shovel. This would have been during his employment with Angelle.
Dr. William Louis Meuleman, an orthopedic surgeon, examined plaintiff on September 5, 1979, and found no disability of the lower back. Plaintiff was referred to Dr. Frederick L. Mayer by plaintiff's and defendants' attorneys for examination. Such examination was made January 7, 1980 and his conclusion was the same as that of Dr. Meuleman. Both physicians concluded that they could find nothing that would interfere with plaintiff's employment.
Plaintiff continued to see Dr. Weinstein during 1979, the last visit being December 29, 1979, complaining of back pain. Dr. Weinstein testified that he could not explain plaintiff's protracted complaints since a back sprain does not usually produce pain after approximately two months.
Other than during the brief hospitalization in May 1979, plaintiff has worked continuously for Angelle, up to the time of trial. Plaintiff stated that he still had pain when he does heavy work. He further stated as follows, however:
"Q. You think you could do that same job you were doing at Martin Mills if they gave you a chance?
"A. Yeah, if they give me a chance, yeah.
"Q. Would you be willing to try?
"A. Yeah."
He further stated that he had not worn any back brace but had only been treated with medication since the accident.
We particularize the above facts for the purpose of showing the evidence fails to meet the requirements of LSA-R.S. 23:1221(4)(p). That provision only allows recovery "where the usefulness of a physical function is seriously permanently impaired."
As we evaluate the medical testimony, plaintiff's testimony and work history, we conclude that plaintiff has not proven that his back strain has produced such a loss of a physical function. We have concluded, however, that plaintiff is entitled to compensation based upon temporary total disability. We find that plaintiff's disability *727 continued from the time of the accident, April 15, 1978, until he went to work for Angelle. Any subsequent pain he may have had was not shown to be of a substantial or disabling nature. This is in accord with the trial court whose reason for not awarding temporary total disability was that the court could not determine from the testimony as to when plaintiff began working for Angelle.
The testimony does not reflect the time of plaintiff's employment with Angelle, but we have examined the record and find that, in the answers to the interrogatories propounded by the defendants, the plaintiff stated that he had received $80.00 per week unemployment compensation beginning in late March 1979, and he received such compensation for approximately six weeks. Compensation was discontinued at the end of the six-week period as he went to work for Angelle.
This information is definitive enough that we can fix the date of plaintiff's employment with Angelle to be May 7, 1979. We therefore hold that plaintiff is entitled to temporary total disability at the rate of $130.00 per week beginning April 15, 1978, and ending on May 7, 1979, the time he went to work for Angelle. The judgment of the trial court shall be amended accordingly.
For the reasons set forth above, the judgment of the trial court is amended by fixing the workmen's compensation award at $130.00 per week for the period beginning April 15, 1978, and ending May 7, 1979. In all other respects the judgment of the trial court is affirmed. Costs of this appeal are assessed one-half to plaintiff-appellee and one-half to defendants-appellants.
AMENDED AND AFFIRMED.