STOKER, Judge.
HISTORY OF THE CASE
This is a worker’s compensation case in which plaintiff, Clifton Durgin, is seeking permanent and total disability benefits, including penalties and attorney fees, from his employer, Oilfield Enterprises, Inc., and its worker’s compensation insurer, Western Preferred Insurance Company. The plaintiff had originally cited American Excess Underwriter’s, Inc. as the worker’s compensation insurer but later substituted the defendant’s actual compensation insurer, Western Preferred Insurance Company. Durgin received worker’s compensation benefits at the rate of $143.09 per week from September 3, 1982, through September of 1983, when they were discontinued. The trial court found that the plaintiff did in fact suffer an industrial accident, but he failed to prove by a fair preponderance of the evidence that he was disabled by the accident. The action was dismissed and penalties and attorney fees were denied. Plaintiff appeals.
FACTS
Clifton Durgin sustained an injury while working as a member of a board road crew. The crew’s job was to lay down board roads to be used as access roads to the oil fields. When access was no longer needed, the crew removed the board road. Dur-gin’s accident occurred on August 27, 1982, while the crew was in the process of removing a board road.
Durgin was attempting to pry a board loose with a pry bar at the time of the accident. The board would not give and the pry bar sprang back and struck him just above the right eye. It was unclear whether the plaintiff was knocked unconscious.
On the same day, Durgin was seen by Dr. Charles Fontenot who maintained a general practice in Ville Platte, Louisiana. Dr. Fontenot testified that his examination showed Durgin to be a well-developed 22-year-old male. He found “no swelling over the eye, no discoloration, and no cut of the skin.” When he attempted to examine the eye itself, he was unable to do so because Durgin held it tightly closed and refused to open it upon request. He thought an eye doctor might be more successful in completing an examination; therefore, he made an appointment for the same day to see Dr. Wyble, an Opelousas opthalmologist.
Upon examination, Dr. Wyble found a small hematoma on his right eyelid, an obviously minor injury. He found no other injury to the eye.
*564 After several visits, Dr. Wyble, unable to find anything wrong with the eye, discharged Durgin from his care and referred him back to Dr. Fontenot. Durgin complained of some pain and dizziness, but there were no other signs of any injury. In response to Durgin’s complaint and, as a precaution, Dr. Fontenot scheduled him for a CAT Scan. He made appointments on two separate occasions. Durgin failed to have the CAT Scan done. He testified that on the occasion of the first appointment the machine was broken, and on the second occasion his car broke down and he was unable to get there in time for the appointment.
The trial court found that Dr. Fontenot and Dr. Wyble were both of the opinion that Durgin “was well able to do arduous work.” Upon dismissal by Dr. Fontenot and Dr. Wyble, Durgin went to see Dr. Tassin, another general practitioner in Ville Platte.
Dr. Tassin was also unable to find any objective sign of injury. Based only upon the complaints of the plaintiff, Dr. Tassin referred him to Dr. Goldware, a neurosurgeon for a neurological examination. Dr. Tassin was of the opinion, based on Dur-gin’s complaints, that Durgin was suffering post-traumatic syndrome.
Dr. Goldware saw Durgin on four occasions. He administered a thorough examination and requested appropriate testing by other doctors in order to consider all possibilities. His reports were made a part of the record and indicate consideration and ultimate rejection of several possible diagnoses. The third report indicates that nothing clinically wrong could be found, thus, based on Durgin’s complaints, Dr. Goldware surmised he suffered from post-traumatic syndrome. But, by the fourth and final report, Dr. Goldware had received results from the other doctors’ tests. He appears to have rejected the post-traumatic syndrome diagnosis in his final report:
“I received a report from Dr. Cole dated March 16, 1983 indicating that there is evidence behaviorly on the tests that the patient is magnifying his complaints to perhaps gain compensation. I am inclined to agree with this interpretation. I do not think there is anything seriously wrong with this young man. , I am going to discharge him and consider him fit for duty.”
Dr. Goldware referred Durgin to Dr. Tarpy whose specialty is otolaryngology— head and neck surgery, and Dr. Cole, a clinical psychologist. Dr. Tarpy examined Durgin and administered a series of tests. All results were normal. Dr. Cole also administered a series of tests. As an expert in clinical psychology, it was his opinion that Durgin was overstating his complaints. When responding to a direct question concerning post-traumatic syndrome Dr. Cole stated:
“A. ... he liked the job and everything. There’s no reason for him not to go back to that.
Q. ... and there was no evidence of a neurosis or a syndrome, of any kind, am I correct?
A. That’s correct.”
APPLICABLE BURDEN OF PROOF
A plaintiff in a worker’s compensation case must prove by a preponderance of the evidence that he received a personal injury by an accident arising out of the course and scope of employment, that he is disabled, and that the disability resulted from the injury sustained in the work-related accident. Gallien v. Supreme Contractors, Inc., 448 So.2d 871 (La.App. 3d Cir.1984); Bateman v. Power Rig Rental Tool Co., 453 So.2d 998 (La.App. 3d Cir.1984). The trial court found that there was an industrial accident on August 27, 1982, arising out of the course and scope of Durgin’s employment, but found that the plaintiff failed to prove he was disabled at the time of this suit.
In the written reasons for judgment, the trial court observed that Dr. Goldware’s deposition stated the touchstone of this case:
“By Mr. Preston N. Aucoin, counsel for the plaintiff:
*565 Q. Okay, so what it boils down to doctor, is somebody has to determine whether or not this man’s telling the truth?
A. Yes sir.
Q. And that’s what the court’s for.
A. Yes sir.”
CREDIBILITY OF WITNESSES
The court in Bateman v. Power Rig Rental Tool Co., supra, at 1003, stated that “[t]he trial judge, a fact finder, has the function of assessing the weight to be accorded competent medical testimony. Martin v. Emerson Elec. Co., 437 So.2d 910 (La.App. 2d Cir.1983). Further, the testimony of a specialist in a certain field is entitled to greater weight than that provided by other medical experts when the subject at issue concerns the particular field of the specialist’s expertise. Ellis v. Rapides Parish School Bd., 419 So.2d 990 (La.App. 3d Cir.1982).” Bateman v. Power Rig Rental Tool Co., supra, at 1003.
There was testimony by several medical specialists and a specialist in the field of clinical psychology. It appears that the trial court lent greater credence to these specialists than to the testimony of Dr. Tassin, a general practitioner. The psychologist, Dr. Cole, was of the opinion that plaintiff overstated his complaints and condition in order to gain compensation and that Durgin did not suffer from any neurosis or syndrome.
Plaintiff cites Vidrine v. American Employers Insurance Company, 129 So.2d 288 (La.App. 3d Cir.1961) as the controlling case. The trial court correctly held that Vidrine differs from this case in many ways and can not control the resolution of the factual issues. In Vidrine, the plaintiff was struck by a 400-pound pipe and rendered unconscious. He remained hospitalized for three days. There was a diagnosis of head injury, laceration of scalp, concussion of the brain, and sprain of the cervical spine. Vidrine was also an older man.
Durgin’s accident was certainly minor compared to Vidrine’s. Durgin was not hospitalized and there was never any diagnosis of any major injury. Durgin is also a young, well-developed man.
Recognizing that the plaintiff in a worker’s compensation case must prove his case by a fair preponderance of the evidence, the trial court found that this burden had not been carried. The trial judge stated in conclusion:
“In effect, what the plaintiff is requesting this court to do is to take the plaintiff’s complaint at face value even though all of the doctors cannot find any objective symptoms of disability through clinical tests, clinical examination or scientific tests. The court by finding for the plaintiff would have to find Durgin’s credibility without question and to full satisfaction. This court finds that Mr. Durgin’s credibility has not reached the point of full reliability and satisfaction. Therefore, this court must refuse plaintiff’s complaints and dismiss his suit at his costs.”
It is clear from the record that the trial court considered the possibility of post-traumatic syndrome and rejected it.
FACTUAL DETERMINATIONS
As in Gallien v. Supreme Contractors, Inc., supra, this is simply a case where the trial court made certain factual determinations and concluded that the plaintiff had not proven his case by the preponderance of evidence necessary to award compensation benefits. “The findings of a trial judge are entitled to great weight, and are not to be disturbed except on a showing of manifest error. Deville v. Port Pipe Terminal of Louisiana, Inc., 419 So.2d 16 (La.App. 3d Cir.1982), writ denied, 422 So.2d 424 (La.1980). Great weight is afforded to the findings of the trial court with regard to credibility of the plaintiff in a workmen’s compensation proceeding. Joseph v. Martin Mills, Inc., 394 So.2d 722 (La.App.3d Cir.1981).” Gallien v. Supreme Contractors, Inc., supra, at 873, 874.
*566 CONCLUSION
We find no error on the part of the trial court. Since the trial court finds there is no disability, it follows that the employer and compensation insurer were not unreasonable in terminating Mr. Dur-gin’s compensation benefits. The employer and insurer relied on competent medical evidence in making their decision to terminate Durgin’s benefits, and thus their action was reasonable.
The trial court’s judgment dismissing this action at plaintiffs costs is affirmed.
AFFIRMED.