486 So.2d 1164 (1986)
Daisy HALL, Plaintiff-Appellant,
v.
DOCTOR'S HOSPITAL OF TIOGA, et al., Defendants-Appellees.
No. 85-249.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1986.
*1165 Thomas R. Willson, Alexandria, John R. Bennett, Marksville, for plaintiff-appellant.
Provosty, Sadler & Delaunay, Albin A. Provosty, Alexandria, for defendants-appellees.
Before KNOLL and KING, JJ., and BRUNSON, J. Pro Tem.[*]
KING, Judge.
The issues presented by this appeal are (1) whether or not the trial court erred in denying plaintiff's motion for a continuance and for a new trial after having allowed plaintiff's counsel of record to withdraw on the day of trial, leaving plaintiff without an attorney during the trial, and (2) whether or not the trial court erred in finding that plaintiff failed to prove that she sustained an injury while at work.
This matter involves a worker's compensation suit filed on December 7, 1983 by Daisy Hall (hereinafter referred to as plaintiff) against her employer, Doctor's Hospital of Tioga (hereinafter referred to as the hospital) and its worker's compensation insurer, St. Paul Insurance Company (hereinafter referred to as St. Paul). After trial on the merits, at which plaintiff represented herself in proper person, the trial court rendered judgment dismissing plaintiff's suit at her cost. Plaintiff through retained counsel then timely filed a Motion For A New Trial which was denied by the trial court. Plaintiff devolutively appeals. We affirm.

*1166 FACTS
Plaintiff brought this suit alleging that on January 4, 1983, while lifting a bucket of water during the course of her work as a housekeeper at the hospital, she injured her back and right leg. The accident was not witnessed by anyone. The record reflects that plaintiff did not report the alleged accident and injury to her supervisor or employer until some time after she was discharged from employment at the hospital on June 13, 1983. The record also reflects that plaintiff never made mention of the accident or injury to her co-employees, though she may have occasionally complained to them about various aches and pains. Plaintiff testified that her reason for not reporting the accident and injury to her employer when it occurred was that she was afraid of losing her job. Plaintiff has been examined by numerous doctors, whose findings related to plaintiff's accident and injury are at best inconclusive, if not negative.
On January 12, 1983, plaintiff had x-rays taken at the Tioga Clinic which revealed no sign of injury to her back. Plaintiff continued to work for the hospital despite her alleged pain. She saw Dr. Charles R. Joiner, a general practitioner, on May 20, 1983, and again on June 2, 1983. In his deposition, which was admitted into evidence at trial, Dr. Joiner stated that he believed that when he first saw the plaintiff on May 20, 1983, she had an irritation to the sciatic nerve and muscle tension headaches. Dr. Joiner also testified in his deposition that plaintiff gave him a two-year history of having such pain and that she denied the occurrence of any traumatic event. He prescribed medication for her and later gave her a written excuse authorizing her to return to work with light duty assignments. Plaintiff discontinued seeing Dr. Joiner because she was not satisfied with his treatment of her. Upon her return to work, plaintiff was terminated from employment because there were no light-duty jobs available at the hospital.
Plaintiff also saw Dr. Edward R. Villemez, a general surgeon, in June of 1983. Dr. Villemez testified in his deposition that a physical examination of plaintiff revealed only some tenderness in the area of the right buttock. All of his other physical findings were negative. Dr. Villemez also testified that plaintiff made no mention to him of any work-related accident as the source of the pain of which she complained.
Plaintiff also saw Dr. Vanda L. Davidson, an orthopedic specialist, on a continuing basis beginning on October 6, 1983. Over the course of treatment, Dr. Davidson examined plaintiff and had x-rays, a CAT-scan, E.M.G. and oblique tomograms performed on her. These tests revealed no objective positive indication of injury. Dr. Davidson's physical examination of plaintiff did yield some signs of injury. Dr. Davidson found on some occasions that plaintiff experienced muscle spasms and tenderness on the right side, that plaintiff's reflex in the right ankle was absent, and that plaintiff's ability to bend was limited. However, Dr. Davidson testified in his first deposition that he did not believe that there was a strong correlation between what may have happened at work and the physical problems that plaintiff was experiencing. In a second deposition, Dr. Davidson stated that his findings were so minimal that no one could make a positive diagnosis based on them and that he was not sure that plaintiff had done any permanent harm to her back from her activities at work. Dr. Davidson indicated that it would take another three or four months in order to determine if plaintiff's condition could be properly diagnosed. Plaintiff was scheduled to return to Dr. Davidson on September 27, 1984, a month prior to her trial, for further examination and testing but failed to keep that appointment.
Plaintiff was also under the care of a chiropractor, R.A. Rabalais, from June 13, 1983 through March 5, 1984, for her alleged work-related injury. Dr. Rabalais testified by deposition that he had previously treated plaintiff in 1979 for another back injury.
At the request of St. Paul, plaintiff was examined by Dr. Ray J. Beurlot, an orthopedic *1167 specialist, on September 15, 1983. Dr. Beurlot, as evidenced by his deposition, was of the opinion, based upon his examinations and testing of plaintiff, that she was not disabled from carrying out her custodial duties at the hospital.
On December 7, 1983, plaintiff, through her attorney of record at the time, Thomas R. Willson, filed suit for compensation benefits against the hospital and its worker's compensation insurer, St. Paul. On July 13, 1984, a pretrial conference was held by the trial judge with the attorneys for both parties and a trial date was set for October 31, 1984. The issues for trial, according to the pretrial order were whether or not plaintiff sustained an accident and incurred her injuries on the job, and if so, what benefits was she entitled to recover and the applicability of penalties and attorney's fees.
On October 10, 1984, plaintiff, through her counsel of record at the time, Mr. Willson, filed a motion for continuance on the grounds that she had recently visited another orthopedist, Dr. Stuart I. Phillips, who ordered more testing to diagnose her condition and on the ground that the results of these tests would not be available prior to the scheduled trial date. After a hearing on this motion for continuance, the trial judge denied plaintiff's request for a continuance.
On October 25, 1984, plaintiff filed in the record an affidavit in authentic form stating that she was aware that trial on the merits was set for October 31, 1984, and that she knew that she would be expected to present all of her evidence at that time; that she had discharged her retained attorney, Mr. Willson, no longer desiring him to represent her in the matter; that she desired to hire another attorney; and that she had been advised by Mr. Willson to retain another attorney to represent her. On October 31, 1984, the day of trial, Mr. Willson, her then attorney of record, filed a motion to withdraw which was granted by the trial judge. An order permitting plaintiff's attorney to withdraw was signed at that time by the trial judge. A petition of intervention was also filed at that time by Mr. Willson in which he sought to recover expenses paid by him in connection with plaintiff's claim.
Trial on the merits was then held on October 31, 1984. Plaintiff at that time moved for a continuance because she had failed to obtain representation by other counsel. The trial judge denied this request and plaintiff proceeded to represent herself in proper person, since she had failed to hire new counsel. After a trial on the merits, judgment was rendered against plaintiff, dismissing her suit at her cost, for the reason that she failed to prove a work-related injury. A judgment was read and signed on December 14, 1984.
Plaintiff then retained new counsel, John T. Bennett, who timely filed a motion for new trial which was denied. Plaintiff now devolutively appeals alleging that (1) the trial judge erred in denying plaintiff's motion for a continuance and for a new trial after the trial judge granted plaintiff's counsel of record's motion for withdrawal on the day of the scheduled trial leaving plaintiff without an attorney; and (2) the trial judge erred in finding that plaintiff failed to prove she sustained her back injury while at work. Plaintiff on appeal also urges us to find that she is entitled to worker's compensation benefits for total and permanent disability and also to penalties and attorney's fees.

MOTION FOR CONTINUANCE
LSA-C.C.P. Article 1601 provides that "[a] continuance may be granted in any case if there is a good ground therefor." The trial court has great discretion in the granting of a continuance which should not be disturbed by a reviewing court absent clear abuse of discretion on the part of the trial court. Evans v. Travelers Insurance Company, 220 So.2d 117 (La.App. 3rd Cir. 1969). However, this discretion may not be exercised arbitrarily so as to deny a continuance, founded on good faith grounds, which may deprive the party of his day in court. Marpco, Inc. v. South States Pipe & Supply, 377 So.2d 525 (La.App. 3rd Cir. *1168 1979); Evans v. Travelers Insurance Company, supra.
Plaintiff contends that the trial judge erred in denying her motion for a continuance and for a new trial after having granted plaintiff's counsel of record's motion for withdrawal on the day of the scheduled trial, leaving plaintiff without an attorney, despite having knowledge of her unpreparedness for trial on the merits. Our careful review of the record reveals that the trial judge did not abuse his discretion in denying plaintiff's motion for a continuance.
The record reflects that plaintiff, of her own choice, discharged her counsel of record, Mr. Willson, less than one week prior to trial and that plaintiff had known of the scheduled trial date for about four and one-half months. The scheduled trial date was almost ten months after plaintiff had filed her suit. Though it was within plaintiff's perogative to dismiss her counsel at any time, the record is devoid of any evidence that would suggest that plaintiff had any good faith grounds for dismissing her counsel of record so close to the trial date which would entitle her to a continuance.
Additionally, on October 25, 1984, plaintiff filed in the record an affidavit, executed in authentic form before a notary and two witnesses, stating that she no longer desired Mr. Willson to represent her and that she was advised that her case would be tried on October 31, 1984, at which time she would be expected to present all of the evidence in her case. She also stated in the affidavit that she had been advised to immediately retain another attorney. Though she indicated in the affidavit that she desired to retain new counsel, on the day of trial she appeared in court without having hired new counsel.
It is clear from the record that plaintiff knew well in advance the date for which the trial was set, that she discharged her counsel of record by her own choice for no apparent reason, and that she failed to obtain new counsel prior to the date of trial. It cannot be said that plaintiff's lack of representation at trial was caused through no fault of her own. Indeed, plaintiff's situation at the time of trial was entirely of her own making.
It is also important to note that the trial judge afforded plaintiff great assistance and latitude in the presentation of her case. See Barham v. Barham, 337 So.2d 289 (La.App. 2nd Cir.1976), writ den., 340 So.2d 315 (La.1976). The plaintiff's witnesses were present to testify on the day of trial. The trial judge allowed plaintiff to examine those witnesses and in doing so, accorded plaintiff great leeway regarding rules of evidence and procedure. The trial court, in addition, aided plaintiff greatly in the direct examination of her witnesses, at many points taking over the direct examination in order to elicit from those witnesses the information that plaintiff desired. The trial judge, in effect, assumed the role of plaintiff's counsel. The trial judge also allowed plaintiff to completely cross-examine the defendant's witnesses, again relaxing the rules of evidence and procedure, and again assuming the role of counsel for plaintiff in order to aid her in eliciting the desired information from defense witnesses.
The plaintiff was given the opportunity to testify, of which she took advantage. The trial court aided plaintiff by conducting an examination of her which allowed plaintiff to present her testimony with clarity and completeness.
The trial judge, as well as Mr. Willson, intervenor, and defense counsel, Mr. Albin Provosty, assisted plaintiff in introducing exhibits and the depositions taken from her doctors. There is nothing reflected in the record to indicate that any evidence, of any import whatsoever, was allowed into evidence to the prejudice of plaintiff, nor that plaintiff was surprised by any of the defense's evidence.
In support of her claim that she was effectively deprived of her day in court, plaintiff calls our attention to Halley v. Halley, 457 So.2d 108 (La.App. 2nd Cir. 1984), writ den., 461 So.2d 316 (La.1984). *1169 However, Halley v. Halley, supra, a Second Circuit case, is readily distinguishable on its facts from the case at hand. In Halley, the defendant's attorneys withdrew on the day prior to trial because of conflicts between the defendant and her attorneys and because her attorneys no longer practiced law together, which caused practical difficulties in the handling of the case. Also, the Second Circuit found that the record in Halley reflected that although the trial judge aided the defendant, there was not adequate cross-examination, nor objections to hearsay and inadmissible evidence and questioning of the defendant's witnesses. The Second Circuit also noted that the defendant became so frustrated and confused that she did not testify. In the case at hand, review of the record does not reflect that plaintiff suffered any of the inequities that existed in Halley.
Plaintiff's original motion for a continuance for the purpose of allowing plaintiff to seek the opinion of yet another physician was properly denied by the trial judge. The trial judge was obviously of the opinion that plaintiff had had more than ample time and opportunity in which to prepare for trial and to gather her medical evidence, and that plaintiff was merely "shopping" for a doctor that would provide a medical opinion favorable to plaintiff's case. It is apparent that plaintiff, having been denied her original motion for continuance, discharged her counsel of record in a ploy to delay the scheduled trial on the merits.
We are of the opinion that plaintiff was accorded her day in court and that plaintiff was in no way prejudiced by the trial judge's denial of her motions for continuance and for a new trial. We find that the trial judge did not abuse his discretion in denying plaintiff's motions for continuance and motion for a new trial.

WORK-RELATED INJURY
Having concluded that the trial judge did not abuse his discretion by denying plaintiff's motion for a continuance, we will now address plaintiff's contention that the trial judge erred in finding that plaintiff failed to prove that she sustained a back injury while at work.
The appellate review of the findings of fact of the trial judge is limited to a determination of whether from the evidence in the record the appellate court can conclude that the trial judge was manifestly in error or clearly wrong in his finding. Canter v. Koehring Company, 283 So.2d 716 (La. 1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). This same standard applies in worker's compensation cases. Stone v. Louisiana Pacific Corporation, 484 So.2d 306 (La.App. 3rd Cir.1986); Sharbono v. H & S Const. Co., 478 So.2d 779 (La.App. 3rd Cir.1985), and cases cited therein; Olson v. Ins. Co. of State of Pa., 471 So.2d 1151 (La.App. 3rd Cir.1985), writ den., 476 So.2d 352 (La.1985), and cases cited therein.
Though procedural rules are to be liberally construed in favor of the worker's compensation claimant, the burden of proof remains on the claimant to prove his case by a preponderance of the evidence. Stone v. Louisiana Pacific Corporation, supra; Fourroux v. North-West Ins. Co., 462 So.2d 1327 (La.App. 3rd Cir.1985), writ den., 465 So.2d 739 (La.1985). The evidence taken as a whole must show that it is more probable than not that a work-connected accident occurred, and that it had a causal relationship to the claimant's disability. Stone v. Louisiana Pacific Corporation, supra; Fourroux v. North-West Ins. Co., supra.
The matter involved here is strictly one of judging the credibility of the witnesses. The credibility assigned by the trial court to testimony in a worker's compensation proceeding is to be given great weight upon review on appeal. Stone v. Louisiana Pacific Corporation, supra; Sharbono v. H & S Const. Co., supra; Roshto v. Wausau Ins. Companies, 457 So.2d 261 (La.App. 3rd Cir.1984), writ den., 460 So.2d 1047 (La.1984).
Review of the record in this case shows that there was more than an adequate *1170 factual basis for the trial court's conclusion that plaintiff failed to meet her burden of proving a work-related injury. Plaintiff was the only witness to the alleged accident. That fact alone is not sufficient reason to find that plaintiff did not suffer a work-related injury, unless the surrounding circumstances discredit her account of the accident so as to warrant a finding that plaintiff failed to prove a work-related accident. See Fourroux v. North-West Ins. Co., supra; Crochet v. American Tobacco Co., 407 So.2d 1330 (La. App. 3rd Cir.1981), writ den., 411 So.2d 468 (La.1982).
Though plaintiff claims she suffered an injury as the result of a work-related accident which supposedly occurred on January 4, 1983, she did not notify her supervisor nor employer of the accident until after she was terminated from employment some six months later. The testimony of many of plaintiff's co-workers reveals that she made no mention to them of the alleged accident, even though she called them as her own witnesses and attempted to elicit from them statements to the effect that they had heard plaintiff complain of pain resulting from the accident. Those witnesses testified only to the fact that they had heard plaintiff make generalized complaints of pain like everyone else. It is important to note that plaintiff failed to even mention that she suffered an injury at work to several of the physicians who treated her (Dr. Joiner and Dr. Villemez) and in the instance of Dr. Joiner, she even denied that she had suffered a traumatic occurrence while giving him a two-year previous history of back trouble.
The medical examinations and tests that were conducted on plaintiff by the various physicians, who testified by way of depositions, were at best inconclusive in regard to whether or not plaintiff suffered from any type of injury, let alone a work-related injury. Though physical examinations may have indicated the presence of some physical anomalies, the results of all the sophisticated medical tests conducted were negative. Additionally, Dr. Davidson testified that plaintiff was an anxious person, very emotional, and capable of acting out symptoms to a physician.
After careful review of the record we find that the trial judge was not manifestly in error or clearly wrong in finding that plaintiff failed to meet her burden of proving that she suffered a work-related accident.
Since we have found that the trial court did not err in finding that plaintiff failed to meet her burden of proving a work-related accident, we need not address the plaintiff's claim for worker's compensation benefits, penalties and attorney's fees.
For the foregoing reasons the judgment of the trial court is affirmed. All costs of this appeal are taxed against plaintiff-appellant.
AFFIRMED.
NOTES
[*] Judge Hugh E. Brunson of the Fifteenth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court.