491 So.2d 161 (1986)
Patrick WRIGHT, Plaintiff-Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA, et al., Defendants-Appellees.
No. 85-868.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1986.
David H. McCroskey, New Iberia, for plaintiff-appellant.
Mouton, Roy, etc., Alan K. Breaud and Patrick M. Wartelle, Lafayette, Denise A. Nagel, Baton Rouge, for defendants-appellees.
Before LABORDE and KING, JJ., and PAVY, J., Pro Tem.[*]
*162 KING, Judge.
The main issue presented by this appeal is whether or not the trial court erred in failing to find the plaintiff temporarily totally disabled as a result of a work-related accident.
Patrick Wright (hereinafter referred to as plaintiff) filed suit against his former employer, The Carborundum Company, and its worker's compensation insurer, Insurance Company of North America (both sometimes hereinafter referred to as defendants), seeking recovery of worker's compensation benefits, medical expenses, legal interest, and penalties and attorney's fees, for an injury that he sustained while working for The Carborundum Company. After a trial on the merits, the trial court denied plaintiff's claim and dismissed plaintiff's suit with prejudice. Plaintiff appeals. We affirm.

FACTS
On April 24, 1984, plaintiff was hired by The Carborundum Company to work as an operator. Plaintiff was assigned to the shipping and receiving department, and his job function consisted of loading bulk tanks and performing related tasks. Plaintiff, along with his co-workers, worked pursuant to a shift schedule where he would work from twelve noon to twelve midnight for three consecutive days, then have three days off, then work from twelve midnight to twelve noon for three consecutive days, then have three days off, and would then repeat this same work schedule thereafter.
On June 23, 1984, after reporting to work at twelve midnight, plaintiff was preparing a tank-truck for shipment and was standing on top of the tank when he lost his footing and fell approximately twelve to fifteen feet to the ground. Plaintiff landed on his feet and then fell backwards. Shortly thereafter plaintiff began experiencing pain in his right leg and lower back, and was taken to Dauterive Hospital, where he was seen by the hospital emergency room physician. After taking X-rays and performing tests on plaintiff, the hospital emergency room physician recommended bed rest and prescribed a muscle relaxant and also a pain reliever for plaintiff to take. The physician further instructed plaintiff to visit his local medical doctor in two days if there was no improvement in his condition, and to take two days off from work.
After being released from the hospital, plaintiff was taken back to the plant where he filled out an accident report. Plaintiff then called his wife, who took him home at about 3:00 or 4:00 A.M. Apparently at the request of plaintiff's supervisor, plaintiff reported to work on the next day of his three-day shift, but, at the insistence of his supervisor, did not do any work. Plaintiff also reported to work on June 25, 1984, the third day of his three-day shift. Plaintiff was told by the plant personnel manager that if he had any problems to visit Dr. Roy Landry, who performed all of the defendant, Carborundum's, pre-employment physicals, and who also treated some of Carborundum's injured employees. Dr. Landry specialized in family practice and occupational medicine.
On June 27, 1984, plaintiff visited the office of Dr. Landry, complaining of occasional pain in his upper lumbar and mid-thoracic area. Plaintiff was not seen by Dr. Landry at this time, but was instead seen by Mr. Harold Broussard, a certified physician's assistant who was working under Dr. Landry's supervision. Mr. Broussard performed various tests on plaintiff to determine the cause of plaintiff's pain, but all tests were negative. Mr. Broussard therefore told plaintiff that he could return to work, and to continue taking the medication prescribed by the hospital physician, and also to return to the clinic if necessary.
Plaintiff did not return to Dr. Landry's office until July 14, 1984. At this time, plaintiff was again seen by Mr. Broussard. Plaintiff explained to Mr. Broussard that his back had improved since the June 27, 1984 office visit, but that it began hurting again while he was shoveling some bauxite at work that day. Mr. Broussard performed another physical examination of plaintiff, similar to the one performed during *163 the June 27, 1984 visit, and noted that plaintiff had a slight decrease in lumbar flexion, based upon plaintiff's subjective response of pain. Plaintiff continued to work after the July 14, 1984 office visit until October 23, 1984, when he, along with almost thirty other workers, was laid off as a result of a reduction in work force. Plaintiff received unemployment compensation benefits from the time that he was laid off until May 25, 1985.
Plaintiff did not return to Dr. Landry's office until January 12, 1985, when he returned complaining of numbness in his right leg and pain in his lower back. This office visit was apparently only two days after plaintiff called Mr. Mason, Carborundum's plant personnel manager, who told plaintiff that he was not calling plaintiff to go back to work at that time. On this visit to Dr. Landry's office, plaintiff was again seen by Mr. Broussard. Mr. Broussard performed another physical examination of plaintiff, the result again being normal. Mr. Broussard instructed plaintiff to return to the office on January 18, 1985 so that Dr. Landry could examine him. Plaintiff returned as scheduled and Dr. Landry conducted a physical examination, the result of which was entirely normal. Dr. Landry nevertheless diagnosed plaintiff as having sciatica, an inflammation or irritation of the sciatic nerve. Dr. Landry's diagnosis was based purely on plaintiff's history. Dr. Landry prescribed Endocin, an anti-inflammatory drug, and told plaintiff to return if his symptoms continued.
Plaintiff returned to Dr. Landry's office on January 25, 1985. At this time plaintiff told Dr. Landry that the medicine had helped but that he wanted to see a specialist. Dr. Landry therefore referred plaintiff to Dr. Fletcher Sutton, an orthopedic surgeon who practices in New Iberia. Plaintiff did not keep his appointment with Dr. Sutton, but instead, went to see Dr. R.C. Llewellyn, a neurological surgeon in New Orleans, on January 29, 1985. Dr. Llewellyn performed a physical examination of plaintiff and rendered a diagnosis of a lumbar spine sprain. This diagnosis was based on plaintiff's subjective response of pain. Dr. Llewellyn prescribed physical therapy treatments for plaintiff, and also medication.
Plaintiff did not return to see Dr. Llewellyn until May 24, 1985. Plaintiff had not undergone the physical therapy, nor had he obtained or taken the medication prescribed by Dr. Llewellyn on the previous visit. On this visit Dr. Llewellyn again performed another physical examination of plaintiff which, unlike the previous physical examination on January 29, 1985, revealed objective findings of muscle spasm affecting the right major muscle group in the low back area and in the right flank muscles. Based on this May 24, 1985 examination, Dr. Llewellyn diagnosed plaintiff as suffering from a lumbar sprain, and still recommended that plaintiff undergo physical therapy.
Upon defendant's failure to pay some of the medical expenses incurred by plaintiff, plaintiff submitted a claim to the Louisiana Office of Worker's Compensation for an informal resolution of his claim against defendants. The Office of Worker's Compensation issued a recommendation, but the recommendation was rejected by one of the parties. Plaintiff thereafter filed this suit against defendants on April 4, 1985, seeking worker's compensation benefits, reimbursement for medical expenses that he had previously incurred, payment of future medical expenses, legal interest, and penalties and attorney's fees. After a trial on the merits, the trial court rendered judgment in favor of defendants, dismissing plaintiff's suit with prejudice. The trial judge further ordered that plaintiff pay all costs of the proceedings. From this judgment, plaintiff has devolutively appealed, and alleges that the trial court erred in:
(1) Failing to find that he was temporarily totally disabled under the provisions of the Louisiana worker's compensation statutes;
(2) Failing to award him reimbursement for medical expenses actually incurred and to make an award to him for future medical expenses;

*164 (3) Failing to order defendants to guarantee payment for the physical therapy recommended by his treating physician;
(4) Failing to find that defendants were arbitrary and capricious in their handling of his claim; and
(5) Assessing court costs against him.

TEMPORARY TOTAL DISABILITY
In his first specification of error, plaintiff contends that the trial court erred in failing to find that he was temporarily totally disabled, under the provisions of the Louisiana worker's compensation statutes, at the time of the trial.
Though procedural rules are to be liberally construed in favor of the worker's compensation claimant, the burden of proof remains on the claimant to prove his case by a preponderance of the evidence. Hall v. Doctor's Hosp. of Tioga, 486 So.2d 1164 (La.App. 3rd Cir.1986); Stone v. Louisiana Pacific Corp., 484 So.2d 306 (La.App. 3rd Cir.1986). One of the elements of the claimant's case, which he must prove by a preponderance of the evidence, is that he is disabled. Williams v. Western Preferred Cas. Ins. Co., 465 So.2d 191 (La.App. 3rd Cir.1985).
In his Reasons for Judgment, the trial judge stated the following:

"It is the impression of the Court and a finding of fact that the plaintiff may have had some sort of a strain or a sprain as a result of the accident but it was not of sufficient disability to prevent him from returning to work in the same place and the same occupation. In fact, the evidence clearly shows that a very few days after the accident the plaintiff did return to work doing the same work and worked satisfactorily until October of 1985 when he was laid off because of a reduction in the work force that caused him and 28 other employees to lose their jobs. It was not until he sought to regain employment in the early part of this year that he sought out of town medical advice and ultimate compensation payments. The plaintiff bears the burden of proving his claims by a preponderance of the evidence. Guidry vs. Ford, Bacon and Davis Construction Company, 376 So.2d 352 (3 C-1979). In order to claim permanent total disability the plaintiff must show he is unable to engage in any selfemployment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which he was particularly fitted by reason of education, training and existance [sic]. The Court finds that as a matter of fact the plaintiff has not carried his case by a preponderance of the evidence and the Court finds that he is able to engage in the identical work that he did prior to his accident." (Emphasis added.)
Although the trial court never specifically stated that plaintiff failed to prove that he was temporarily totally disabled at the time of trial, it is clear that the trial court found that plaintiff failed to prove by a preponderance of the evidence at the time of trial that he was disabled, either temporarily or permanently, as a result of his June 23, 1984 accident.
The manifest error standard of appellate review applies to worker's compensation cases. Meeks v. State Farm Fire & Cas. Co., 402 So.2d 138 (La.App. 1st Cir.1981), and cases cited therein. Review of the record in this case shows that there was more than an adequate factual basis for the trial court's conclusion that plaintiff failed to meet his burden of proving his disability, either temporary or permanent, as resulting from the June 23, 1984 accident.
Except for three shifts, including those not worked immediately following the accident, plaintiff worked continuously at his regular employment from the time of the accident until he was laid off on October 23, 1984. Plaintiff admitted at trial that he did not make a single complaint to anyone at work following the accident that he was in pain or in any discomfort. In addition, Dr. Landry testified that plaintiff told him *165 that he was well until sometime after Christmas (of 1984) when he noted numbness in his right leg. Plaintiff, in fact, admitted that his pain did not start until "after the holidays."
As the trial court noted, it was not until after plaintiff unsuccessfully sought to regain his employment with Carborundum that he sought medical attention and ultimately worker's compensation benefits. In fact, the evidence in the record indicates that plaintiff called Mr. Mason about being re-hired, at the earliest, only two days before appearing in Dr. Landry's office complaining of pain. Mr. Broussard testified that, after examining plaintiff on January 12, 1985, he told plaintiff to return to the clinic on Friday (January 18, 1985) because he was suspicious that plaintiff was malingering. Dr. Landry testified that after examining plaintiff on January 18, 1985, he also was suspicious that plaintiff was a malingerer. Dr. Landry further testified that he issued a report dated February 28, 1985 to The Carborundum Company regarding his opinion that plaintiff's illness "on January, 1985 was not a result of his injury of June 23rd of '84." Although Dr. Llewellyn testified that, in his opinion, plaintiff was suffering from a lumbar sprain as a result of the accident, he admitted that his diagnosis, including that of causation, was based on his understanding from plaintiff that plaintiff's complaints of pain had been ongoing and continuous since the date of the accident on June 23, 1984, which understanding was erroneous based on plaintiff's own admission.
Finally, plaintiff admitted at trial that in applying for federal supplemental benefits, both in October, 1984 and January, 1985, he answered "no" to two questions located on the application form, to-wit: (1) "Do you have a physical or health condition that would affect your ability to work?" and (2) "Is there any reason why you could not accept employment if you found a job?" Plaintiff further admitted that he submitted a computer card to the Louisiana Department of Employment Security each week that he received unemployment benefits, which was from October 23, 1984 through May 25, 1985, and that on this card he verified weekly to the Department that he was able to work and available for work. The fact that plaintiff designated that he was not disabled in applications for unemployment compensation benefits can be considered along with other evidence. Jackson v. New Orleans Public Service, Inc., 386 So.2d 1049 (La.App. 4th Cir.1980).
After careful review of the record, we conclude that the trial judge was not manifestly in error or clearly wrong in failing to find that plaintiff was either temporarily or totally disabled as a result of his accident on June 23, 1984.

MEDICAL EXPENSES AND PHYSICAL THERAPY
In his second and third specifications of error, plaintiff alleges that the trial court erred in (1) failing to award him reimbursement for medical expenses actually incurred and to make an award to him for future medical expenses; and (2) failing to order defendants to guarantee payment for necessary physical therapy recommended by his treating physician.
Defendant apparently paid for plaintiff's medical expenses which he incurred at the time of his accident. Plaintiff's medical expenses, for which he seeks payment or reimbursement, relate to his visits to Dr. Landry's office and to Dr. Llewellyn's office beginning in January, 1985. Since we have affirmed the trial court's finding that plaintiff is not disabled from his June 23, 1984 accident, plaintiff has no right to be paid for these expenses, which he has not proved were related to his accident on June 23, 1984. Likewise, and for the same reason, plaintiff has no right to a guarantee by defendants to pay for physical therapy recommended by Dr. Llewellyn. Accordingly, we conclude that the trial court did not err in failing to award plaintiff unpaid medical expenses and reimbursement for expenses actually incurred, nor in failing to order defendants to guarantee payment for physical therapy treatments *166 recommended by plaintiff's treating physician.

PENALTIES AND ATTORNEY'S FEES
In his fourth specification of error, plaintiff alleges that the trial court erred in failing to find that defendants were arbitrary and capricious in their handling of his claim. Since we have affirmed the trial court's finding that plaintiff is not disabled and not entitled to benefits, it follows that defendants' action was reasonable. Durgin v. Oilfield Enterprises, Inc., 476 So.2d 562 (La.App. 3rd Cir.1985). For this reason we find this specification of error has no merit.

COURT COSTS
In his final specification of error, plaintiff alleges that the trial court erred in assessing court costs against him as it did not first make a determination that his suit had not been brought on reasonable grounds, citing LSA-R.S. 23:1320. This statute, effective July 1, 1983, contains the same subject matter as had been previously found, since 1926, in former LSA-R.S. 23:1319. Under this previous similar statute the courts have held that even though plaintiff was allowed to institute his suit and appeal in forma pauperis, he could nevertheless be taxed with the costs of the trial court and appellate court proceedings in a suit for worker's compensation benefits if the courts considered it equitable. See LSA-C.C.P. Articles 1920, 2164, and 5188. Guardalabene v. Tenneco Oil Company, 246 So.2d 708 (La.App. 4th Cir.1971); Williams v. American Marine Corporation, 212 So.2d 502 (La.App. 4th Cir.1968), and cases cited therein. Accordingly, we conclude that the trial court did not abuse its discretion in finding it equitable to assess court costs against plaintiff.
For the foregoing reasons, the judgment of the trial court is affirmed. We also find it equitable to assess all costs of this appeal against plaintiff-appellant.
AFFIRMED.
NOTES
[*] Judge H. Garland Pavy of the Twenty-Seventh Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court.