CRAIN, Judge.
This is an appeal from the judgment of the trial court in a worker’s compensation action.
Anthony Marchan was employed as a laborer by Qualicare Walsh Construction Company. On August 4, 1983, during the course and scope of his employment, Mar-chan allegedly suffered an injury to his lower back. He received worker’s compensation benefits from August, 1983, through March 14, 1984. Marchan has been unemployed since the onset of the injury.
This action was instituted by Marchan, alleging that he is totally and permanently disabled and seeking the reinstatement of his worker’s compensation benefits. After trial on the merits judgment was rendered by the trial court in favor of defendant. From this judgment Marchan appeals. The primary issues on appeal are: whether the alleged injury occurred within the course and scope of Marchan’s employment; and whether defendant is permanently and totally or partially disabled as a result of his injury.
COURSE AND SCOPE OF EMPLOYMENT
The evidence reflects that on August 4, 1983, Marchan was breaking up and tearing out concrete forms with a crowbar, during the course and scope of his employment. While bending forward and pulling down on the crowbar he experienced severe lower back pain, pain in the eyes, and dizziness which he immediately related to coworker, Eddie Green. Green testified that Marchan left immediately to report the incident to Mr. Lee, the job superintendent. Lee testified that he accompanied Marchan to the Rhodes-Spedale Hospital and then to the office of Dr. J. Barry Roberts, M.D. for medical treatment. An employer’s first report of injury was filed on August 5, 1983, in reference to the August 4, 1983 injury.
On August 5, 1983, Wilbert McClay, Jr., M.D. diagnosed Marchan to be suffering from “acute back strain from heavy lifting and fatigue, as well as several other non-related conditions.” (Emphasis original). Dr. McClay advised Marchan to remain at rest for one to two weeks until further evaluation. Live and deposition testimony of several subsequent treating physicians is not inconsistent with this diagnosis.
Based on the sparse oral reasons for judgment, we assume that the trial court found that Marchan was injured during the course and scope of his employment. This finding is overwhelmingly supported by the record.
PERMANENT PARTIAL OR TOTAL DISABILITY
Marchan received worker’s compensation benefits from August 12, 1983, to March 14, 1984. Dr. Thomas Plantz, chiropractor, treated Marchan from August 30, 1983, to June, 1984. In Dr. Plantz’s opinion Mar-chan suffered from a lumbar strain/sprain *1048 with a grade I disc compression, complicated by paravertebral myofascitis and sciatic radiculitis. Dr. Plantz testified that Mar-chan’s prognosis was “guarded” and that he was not consulted as to the advisability of Marchan’s return to work. Dr. Plantz further stated that had he recommended Marchan’s resumption of manual labor, such recommendation “would have been very restrictive.”
Dr. Jack Loupe, orthopedist, testified by deposition that he first examined Marchan on December 6, 1984. He could find nothing objectively wrong with Marchan based on the physical examination. A discogram, performed on December 17, 1984, revealed disc degeneration in L5/S1, L4/L5, L3/L4, L2/L3. Dr. Loupe stated that the presence of pain upon injection during a discogram usually indicates internal disc disruption resulting from acute trauma. He found no evidence of internal disc disruption from the discogram; the disc disruption was painless and asymptomatic. Dr. Loupe was unable to discern whether the painless disc degeneration was caused by injury or by the aging process. He was unable to properly formulate an opinion on Mar-chan’s prognosis without a psychological evaluation of Marchan. Marchan’s future employment, in Dr. Loupe’s opinion, should be limited by the degree of pain which Marchan can subjectively tolerate.
Dr. F.C. McMains, orthopedist, testified by deposition. He initially examined Mar-chan on October 25, 1983. By letter dated November 10, 1983, Dr. McMains stated:
From a historical standpoint, this patient apparently sustained a sprain of his lum-bosacral spine some 2 months ago. He has very little objective evidence at this time of continued difficulty. I feel that this patient is capable of returning to work, but should avoid heavy lifting and bending. The patient can squat and lift up to 10 to 15 pounds.
The results of the CAT scan reviewed by Dr. McMains in April, 1984, were normal. When questioned in reference to the findings of the discogram performed by Dr. Loupe, Dr. McMains stated that the reliability of a discogram is questionable. A CAT scan is the more definitive test. He testified that from an orthopedic standpoint there was no physical evidence of impairment which would prevent or limit Mar-chan’s return to work as of April, 1984. He refused to assess any degree of disability based solely on Marchan's subjective complaints.
Dr. Joe A. Morgan, orthopedist, testified by deposition that he first examined Mar-chan on February 22, 1984. At Dr. Morgan’s suggestion, Marchan underwent a CAT scan and EMG. The results of the CAT scan were normal, whereas the EMG suggested chronic mild to moderate radicu-lopathy (nerve root irritation). After considering the results of the CAT scan and EMG, Dr. Morgan diagnosed Marchan as suffering mild nerve root irritation at L5/S1. He concluded that Marchan was able to return to work without restrictions as of March 12, 1984. Taking into account the findings of the discogram performed by Dr. Loupe suggesting a degenerative disc condition, the results of the CAT scan, EMG, and the physical examination, Dr. Morgan could find no orthopedic or neurological indication which would prevent or impede Marchan from resuming his occupation.
Dr. Anthony Ioppolo, neurosurgeon, testified by deposition that he first examined Marchan on October 10,1984. At that time Dr. Ioppolo noted hyperactive reflexes in the lower extremities, a questionable up-going toe on the left side and a spastic gait. Dr. Ioppolo suggested that Marchan undergo a myelogram which was performed on October 18, 1984. The results were normal. A dermatomal somatosensory evoked response test (DSER) was performed on November 2,1984 by Dr. James Robertson, neurologist, upon the advice of Dr. Ioppolo. The test results showed a decreased conduction in the first sacral nerve on the left side. Dr. Ioppolo stated that the DSER findings are not necessarily abnormal, they may be a variation of normal. After reviewing the myelogram, CAT scan, DSER, and taking into account the physical examination and the results of all other tests performed by the various treating or evalu *1049 ating physicians, Dr. Ioppolo was unable to assign any functional disability to Marchan. He assigned a 5% anatomical disability based solely on Marchan’s subjective complaints of pain. In his opinion Marchan is able to resume his occupation as a laborer.
Dr. Allen S. Joseph, neurosurgeon, testified by deposition that Marchan was referred to his office by Dr. Ioppolo for a second opinion. Marchan was examined by Dr. Joseph on November 13, 1984. Although Marchan’s history indicated a possible pinched nerve, the physical examination demonstrated no objective evidence of this condition. He reviewed an EMG test performed and interpreted by Dr. Gold, suggesting that Marchan suffered from chronic radiculopathy on the right side. In Dr. Joseph’s opinion an EMG is not a definitive test. Its function is to provide information used to corroborate information or findings gleaned from a patient’s history or examination. Dr. Gold’s findings of right radicu-lopathy did not account for the left leg pain complained of by Marchan. He further stated that the results of the EMG and DSER may be within variations of normal. He personally reviewed the myelogram and found it to be normal. In Dr. Joseph’s opinion there was no objective evidence of abnormality to account for Marchan’s continued complaints of pain and pain caused disability. He was unable to find any anatomical disability based on neurologic and radiographic evidence. He recommended a more sedentary occupation solely on the basis of Marchan’s subjective complaints of pain.
The injury occurred in August, 1983, therefore, under La.R.S. 23:1221(2)(c) a claimant must prove permanent total disability by clear and convincing evidence. The manifest error standard of review applies to worker’s compensation cases. Wright v. Insurance Company of North America, 491 So.2d 161 (La.App. 3d Cir.1986). However, an appellate court should evaluate the deposition testimony based on the sufficiency and preponderance of the evidence and apply the manifest error standard of review to live testimony offered at trial. Hayes v. Commercial Union Assurance Co., 459 So.2d 1245 (La.App. 1st Cir. 1984), writ denied, 462 So.2d 1247 (La.1985). The trial court’s oral reasons for judgment were sparse; however, we assume that the trial court found that plaintiff failed to prove his alleged disability.
After reviewing the record we conclude that plaintiff failed to meet the burden of proving his permanent disability, partial or total. Plaintiff’s worker’s compensation benefits were properly discontinued in March, 1984. Accordingly, the judgment of the trial court dismissing plaintiff’s action is affirmed. Costs of this appeal are assessed against plaintiff.
AFFIRMED.